**Vicente GALVAN and Marcelino Torres, Plaintiffs,**

v.

**Martin P. CATHERWOOD, Industrial Commissioner of the State of New York, Defendant.**

**70 Civ. 2019.**

United States District Court,
S. D. New York.

April 12, 1971.

John Dewitt Gregory, and Oscar G. Chase, New York City, for plaintiffs.

Louis J. Lefkowitz, Atty. Gen., of the State of New York, by Steven M. Hochberg, Asst. Atty. Gen., for defendant.

Dennis R. Yeager and E. Richard Larson, New York City, for amicus curiae.

Before FEINBERG, Circuit Judge, TYLER and POLLACK, District Judges.

## OPINION

TYLER, District Judge.

Vicente Galvan and Marcelino Torres, plaintiffs, have brought this action pursuant to 42 U.S.C. § 1983 to redress the alleged violation of rights secured to them by the Constitution of the United States. Asserting jurisdiction under 28 U.S.C. § 1343(3), (4), plaintiffs contend that the denial by the defendant, the Industrial Commissioner of the State of New York, of unemployment insurance benefits to them and other native Puerto Ricans similarly situated pursuant to a policy hereinafter described, constitutes a violation of their right to travel, due process of law and equal protection of the laws.

By various interstate agreements, New York State unemployment benefits may be collected by a claimant who has moved away from New York. Every claimant's eligibility for unemployment insurance benefits is partially determined by New York Labor Law, McKinney's Consol. Laws, c. 31, § 591 which provides in pertinent part as follows:

"1. Unemployment. Benefits shall be paid only to a claimant who is totally unemployed and who is unable to engage in his usual employment or in any other for which he is reasonably fitted by training and experience.

"2. Availability and capability. No benefits shall be payable to any claim-

ant who is not capable of work or who is not ready, willing and able to work in his usual employment or in any other for which he is reasonably fitted by training and experience."

Pursuant to § 591, for many years the policy of the Commissioner has been that benefits are not paid to a claimant who: (1) leaves the labor market area in which he was last employed, and (2) moves his residence to another labor market area where there are no reasonable opportunities of obtaining work for which he is qualified by training and experience. · The policy is founded on the determination that a person who insulates himself from any reasonable opportunity of employment is not truly available for work within the meaning of § 591(2).

Beginning in 1967, following a series of decisions of the New York State Department of Labor Unemployment Insurance Appeal Board,[1] the defendant, who is charged with administering the Unemployment Insurance Law, decided that a claimant's removal to an area of "high persistent unemployment" was convincing evidence that he had moved to an area where there was no reasonable opportunity of obtaining work. Accordingly, unless he possesses an occupational skill for which there is a particular demand, such a claimant is now deemed unavailable for work and denied benefits.

The defendant's definition of an area of high persistent unemployment is derived from a classification which appears in *Area Trends in Employment and Unemployment,* a publication of the United States Department of Labor, Manpower Administration.[2] In practice, the State

of New York has limited application of its policy to those areas where the unemployment rate is over twelve percent of the area's total work force. Of the 150 major labor areas classified in *Area Trends,* only two areas fall into "Group F", the category for those areas having an unemployment rate over twelve percent. Both of those areas are in Puerto Rico. While *Area Trends* also lists smaller labor markets, it does not compute their unemployment rates. To determine the unemployment rates for these regions, New York apparently relies on statistics provided by the state to which the claimant has moved or on direct correspondence with the local office. It is not at all clear at this stage of the litigation whether there are areas other than those in Puerto Rico with unemployment rates of 12 percent or more to which a New York claimant has moved.

Plaintiffs are Puerto Rican born citizens of the United States. Each has worked in New York for several years, though his dependents have continued to reside in Puerto Rico. Plaintiffs' New York employment has tended to be seasonal because of decreased activity in their occupations in the winter months.[3] While without work, plaintiffs have occasionally sought work in New York; more often, they have returned to Puerto Rico. During these periods of unemployment, both plaintiffs, whether in New York or Puerto Rico, received New York State unemployment insurance benefits. While they were unemployed, plaintiffs continued to look for work and reported their efforts to the appropriate agency. In late 1968, after losing their

1. AB #125,842; 145,076; 147,282.

2. "Areas of Persistent Unemployment
   A labor area, or a city of 250,000 or more population, or a county, may be classified as an area of 'persistent unemployment' when unemployment during the most recent calendar year has averaged 6 percent or more of the work force, and the rate of unemployment has:
   (1) Averaged 6 percent or more and has been at least 50 percent above the national average for 3 of the preceding 4 calendar years, or

   (2) Averaged 6 percent or more and has been at least 75 percent above the national average for 2 of the preceding 3 calendar years, or

   (3) Averaged 6 percent or more and has been at least 100 percent above the national average for 1 of the preceding 2 calendar years."

3. Galvan is a construction laborer; Torres has worked as a groundskeeper or building porter.

jobs in New York, plaintiffs upon returning to Puerto Rico were, pursuant to the previously described policy, denied unemployment benefits because of their having moved to an area of "high persistent unemployment".[4]

Plaintiffs challenge the Commissioner's policy on the grounds that: (1) it infringes their right to travel; (2) it violates due process because the standard is arbitrary and vague and does not afford sufficient notice; (3) it violates due process because the distinction between Puerto Ricans who remain in New York and collect benefits and those who move to Puerto Rico and do not, ignores the employment prospect of the former and is, therefore, without a reasonable basis; and (4) it violates equal protection as applied because it discriminates against Puerto Ricans.

Because of the substantial constitutional questions raised, see the memorandum dated September 2, 1970 filed by the undersigned judge, a three-judge court was convened to hear and determine this controversy. There are presently two motions before the court: defendant's motion to dismiss the complaint and plaintiffs' motion to declare this a class action under Rule 23, F.R.Civ.P.

Turning first to their contention that the policy in question violates their constitutionally guaranteed right to travel, plaintiffs understandably rely upon Shapiro v. Thompson, 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969) wherein the Supreme Court condemned Connecticut's one-year residence requirement for public assistance. We do not deem it clear in the context of this case, however, that the unlimited right to travel out of the state as asserted by plaintiffs falls within the ambit of constitutional protection. The Court in *Shapiro* relied heavily on the fact that the restriction involved created an "invidious distinction" between residents of the state. In this case, plaintiffs concededly have left the state from time to time to take up residence in Puerto Rico; conceivably,

the benefits or obligations owed by the State of New York to its former residents are not co-equal with those owed to its present residents. Indeed, it may be that New York is not constitutionally required to provide unemployment benefits for anyone who leaves the state.

■■ In any event, the right to travel freely throughout the several states is not an absolute right. American citizens are "free to travel * * * uninhibited by statutes, rules, or regulations which unreasonably burden or restrict this movement." *Shapiro* at 629, 89 S.Ct. at 1329. In the case before us, the restriction involved is a minor one; claimants forfeit their rights only if they go to an area of such "high persistent unemployment" that they are deemed to have effectively isolated themselves from any possibility of reemployment. Furthermore, at least on the record before us, this limitation is reasonably and directly related to the long-standing and valid policy of the unemployment insurance provisions of New York law—e. g. that a claimant be "ready, willing and able to work". New York Labor Law § 591(2).

■ Plaintiffs' second contention, that the standard is arbitrary and vague and thus violative of the due process clause of the Constitution, is without merit. The previously mentioned federal standard from *Area Trends* defines "persistent unemployment" with adequate precision; defendant's use of the higher figure, cutting off only those claimants who move to an area where the unemployment rate is over twelve percent, is likewise sufficiently precise.

■ Plaintiffs also question defendant's reliance upon the classification of the *Area Trends* statistics. Doubtless with substantial accuracy, they assert that the statistics were compiled by the Manpower Administration of the United States Department of Labor for its own purposes unrelated to the Unemployment Insurance Law of New York. That circumstance, however, does not compel the

4. The unemployment rate for Aguadilla, Galvan's home, is over twenty percent;

the rate for Adjuntas, Torres' home, is over twenty five percent.

conclusion that the use of those figures by New York as described heretofore is unreasonable or arbitrary. These statistics set forth the rates of unemployment in labor market areas throughout the United States; those rates are surely indicative of whether a claimant has moved to an area of such high unemployment that he has effectively isolated himself from all likelihood of reemployment. New York is not required to research and compile its own statistics when others suitable to the purpose are readily available.

■ Turning to the question of notice, given the nature of the problem, we assume that notice of any kind is impracticable prior to initial, individual application for benefits. Thus, it is not surprising that in New York all claimants are furnished a copy of the booklet, "New York State Unemployment Insurance Information for Claimants", which contains the following caveat:

"If you move to an area where there are no reasonable job prospects for you in any line, you will not be eligible for unemployment insurance." Id. at 23.

This, in our view, is adequate notice. Moreover, an "unavailable" claimant is not irrevocably cut off from benefits; he is again eligible when he satisfies a New York State insurance office that he is once more "ready, willing and able to work". Id. at 19.

■ Plaintiffs' next contention is that the policy draws an invidious distinction in that, by denying unemployment benefits to Puerto Ricans who return to Puerto Rico, it gives no weight to the employment prospects of Puerto Ricans who remain in New York City.[5] We are not persuaded, however, that this "distinction" is unreasonable. While those claimants who remain at or near their previous place of employment in New York may be said to be involuntarily unemployed, those who move from or within the state voluntarily have changed their situation. In the latter case, it is not unreasonable for New York to require that such a move advance movants' availability for employment. In administering the unemployment insurance law, the state has many alternatives. Plaintiffs in effect are asking this court to pick and choose between valid but competing policies. But,

"[i]n the area of economics and social welfare, a State does not violate the Equal Protection Clause merely because the classifications made by its laws are imperfect. If the classification has some 'reasonable basis,' it does not offend the Constitution simply because the classification 'is not made with mathematical nicety or because in practice it results in some inequality.'" Dandridge v. Williams, 397 U.S. 471, 485, 90 S.Ct. 1153, 1161, 25 L.Ed. 2d 491 (1970) quoting Lindsley v. Natural Carbonic Gas Co., 220 U.S. 61, 78, 31 S.Ct. 337, 55 L.Ed. 369 (1911).

■ Plaintiffs' fourth argument, however, raises what, in our view, are more difficult questions incapable of certain resolution on the present record put before the court by counsel for the parties. On presently available information, it appears that, with two isolated exceptions, New York has applied this policy only to persons who move to Puerto Rico. Assuming this to be the fact, such may at least arguably work a violation of the equal protection clause of the Constitution. This would be so on the theory that New York either arbitrarily and discriminatorily defined high persistent unemployment so that it would apply only to Puerto Rico or that New York only investigates the unemployment rates of regions for which rates are not listed in Area Trends if those regions are in Puerto Rico. Accordingly, defendant's

---

5. A survey cited by plaintiffs indicates that Puerto Ricans in New York City face an unemployment rate of between nine and ten percent, while the overall rate in New York has been less than four percent for the past four years. Poverty Area Profiles, October 1969 (No. 13, Urban Studies Series, United States Department of Labor, Middle Atlantic Regional Office.)

motion to dismiss the complaint is denied, and the case will be set for a hearing on the limited question of whether the policy is being applied in a discriminatory manner.

There but remains plaintiffs' motion to declare this a class action. Presently, there seems little to commend this as an appropriate cause for class action treatment. Nevertheless, since the facts on this and other subjects still remain undeveloped, and because no parties will be prejudiced thereby, the class action application is denied without prejudice to renewal after completion of the aforementioned hearing.

In sum, defendant's motion to dismiss the complaint is granted in all respects save for plaintiffs' claim of discriminatory application of New York's policy described in this memorandum.

It is so ordered.

