**Vicente GALVAN and Marcelino Torres,
Plaintiffs-Appellants,**

**v.**

**Louis L. LEVINE, Industrial Commissioner of the State of New York,
Defendant-Appellee.**

No. 91, Docket 73–1294.

United States Court of Appeals,
Second Circuit.

Argued Nov. 5, 1973.

Decided Dec. 3, 1973.

Robert P. Roberts, New York City (National Employment Law Project; Marttie L. Thompson, Community Action for Legal Services, Inc., New York City and Oscar G. Chase, of counsel), for plaintiffs-appellants.

Amy Juviler, New York City (Louis J. Lefkowitz, Atty. Gen. of N. Y., Samuel A. Hirshowitz, First Asst. Atty. Gen., and Brenda Soloff, Asst. Atty. Gen., of counsel), for defendant-appellee.

Before WATERMAN, FRIENDLY and TIMBERS, Circuit Judges.

FRIENDLY, Circuit Judge:

This action, under the Civil Rights Act, 42 U.S.C. § 1983, and its jurisdictional implementation, 28 U.S.C. § 1343(3), was initiated over three years ago in the District Court for the Southern District of New York by two Puerto Ricans who for many years had been employed in largely seasonal jobs in New York and who, on at least some occasions, had returned to Puerto Rico when without work here. They brought suit on behalf of themselves and all other persons similarly situated against the Industrial Commissioner of the State of New York, who had denied them and other Puerto Ricans who had returned from New York to Puerto Rico unemployment compensation benefits to which they claimed to be entitled. Although plaintiffs have been generally successful, they attack the court's denial of their motion for class action designation. In order to afford needed perspective with regard to plaintiffs' claim and our power to entertain it, a rather extensive history of the litigation is required.

## I.

The complaint challeged the constitutionality of New York Labor Law § 591, subd. 2, McKinney's Consol.Laws, c. 50, denying unemployment benefits to a person "not ready, willing and able to work in his usual employment or in any other for which he is reasonably fitted by training and experience," as this had been applied by the Industrial Commissioner. The Commissioner had adopted a policy of denying benefits to a claimant who had left the labor market area in which he was last employed and had moved his residence to another labor market area where there were no reasonable opportunities of obtaining work for which he was qualified by training and experience or which the community had to offer. Later the Commissioner had made this more specific by ruling that, save for persons with occupational skills for which there was a particular demand at their destination, removal to an area of "persistent high unemployment" would establish ineligibility as a matter of law. The complaint alleged that this policy had resulted in denial of unemployment compensation benefits to the named plaintiffs and also that the policy "was developed for the purpose of denying benefits to Puerto-Rican Americans who return to Puerto Rico and, in practice, has been exclusively applied to that group of claimants."

Judge Tyler requested the convening of a three-judge court pursuant to 28 U.S.C. § 2281 and such a court, consisting of Circuit Judge Feinberg, District Judge Pollack and himself, was constituted. Plaintiffs moved, pursuant to F.R.Civ.P. 23(c), "for an order determining that this action is properly maintained as a class action under Rule 23(a) and (b)(2) on behalf of all persons of Puerto Rican origin who have been or may be denied unemployment insurance benefits on the basis of the defendant's policy and practice alleged in the Complaint." On April 12, 1971, the court issued its unanimous opinion, written by Judge Tyler, 324 F.Supp. 1016, dealing with this motion and with defendant's motion to dismiss the complaint. The evidence showed that in 1967 the Commissioner purportedly had quantified his definition of areas of high persistent unemployment to include those where the ratio was 12% or more, rather than the 6% regarded as a norm in the Department of Labor's *Area Trends in Employment and Unemployment.* The court found no basic constitutional infirmity in the Commissioner's policy but was concerned with plaintiffs' argument, incapable of resolution on the existing record, that, with two isolated exceptions, New York had applied the 12% rule only to persons who had moved to Puerto Rico. Accordingly, it granted the Commissioner's motion to dismiss the complaint "in all respects save for plaintiffs' claim of discriminatory application of New York's policy. . . .", 324 F.Supp. at 1021, disposition of which claim was reserved for a hearing. With

respect to the motion for class action designation, the court said:

> There but remains plaintiffs' motion to declare this a class action. Presently, there seems little to commend this as an appropriate cause for class action treatment. Nevertheless, since the facts on this and other subjects still remain undeveloped, and because no parties will be prejudiced thereby, the class action application is denied without prejudice to renewal after completion of the aforementioned hearing.

*Id.*

After amendment of the complaint to include a claim under Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d et seq., and additional discovery, both sides moved for summary judgment and ultimately stipulated that the court might decide the case on their cross motions. Nothing was said about the motion for class-action designation. On July 5, 1972, the court again speaking through Judge Tyler rendered a second unanimous opinion, 345 F.Supp. 67. It considered on its own motion whether the narrowed issues remaining for decision were grounded on the unconstitutionality of a state statute or "of an order made by an administrative board or commission acting under State statutes," see Oklahoma Natural Gas Co. v. Russell, 261 U.S. 290, 292, 43 S.Ct. 353, 354, 67 L.Ed. 659 (1923), as it had assumed, we think correctly, the Commissioner's "high persistent unemployment" policy as further quantified by the 12% rule to be, see Lathrop v. Donohue, 367 U.S. 820, 824–827, 81 S.Ct. 1826, 6 L.Ed.2d 1191 (1961); Law Students Civil Rights Research Council, Inc. v. Wadmond, 299 F.Supp. 117, 127–128 (S.D.N.Y.1969), aff'd, 401 U.S. 154, 91 S.Ct. 720, 27 L. Ed.2d 749 (1971). Despite the previous granting of defendant's motion to dismiss "in all respects save for plaintiffs' claim of discriminatory application," plaintiffs continued in effect to try to attack the 12% rule partly on its face by urging contentions (1) that the rule intentionally "was promulgated to apply, and does apply, only to Puerto Rico, and not to other areas of twelve percent unemployment," and (2) that the rule "has a dramatic discriminatory impact upon Puerto Rican claimants." 345 F.Supp. at 69. Judge Tyler acknowledged that insofar as these issues remained in the case, the previous assumption that a three-judge court was required continued valid. *Id.* at 70. While he did not state expressly that these two issues had been eliminated from the controversy by the earlier partial granting of the motion to dismiss, cf. *id.* at 74 n. 6, it is clear from his opinion taken as a whole that the court viewed plaintiffs' constitutional claims at this juncture as standing or falling with their claim of discriminatory application. Therefore, the continued necessity for a three-judge court effectively stood or fell with its need for purposes of considering this particular claim.

■ The court thought the issue of discriminatory application was not within the three-judge statute on the basis of Phillips v. United States, 312 U.S. 246, 61 S.Ct. 480, 85 L.Ed. 800 (1941), to which it could have added Ex parte Bransford, 310 U.S. 354, 361, 60 S.Ct. 947, 84 L.Ed. 1249 (1940), both holding that a three-judge court is not mandated "where the challenge was not to the statute authorizing the officer to act, but to his particular exercise of his statutory powers." ALI, Study of the Division of Jurisdiction between State and Federal Courts, at 321 (1969). We believe the court was right. While "[t]he distinction is treacherously subtle, and difficulty to rationalize," *id.*,[1] perhaps indeed impossible to apply in any principled way, courts must do the best they can with it in what we devoutly hope to be the short period during which Congress permits § 2281 to continue to plague all three levels of the federal ju-

---

1. See the devastating criticism in D. Currie, The Three-Judge District Court in Constitutional Litigation, 32 U.Chi.L.Rev. 1, 37–50 (1964).

dicial system.[2] Here the discriminatory application of the 12% rule was at several removes both from the statute and from the Commissioner's general policy of denying benefits to persons who had moved to a labor market where there was no reasonable opportunity for employment. No legislative or administrative policy could be frustrated by a court's preventing the application of a reasonable rule in an invidious manner, very likely not even known to the Commissioner himself. This is no less true because the Commissioner may have been aware of the impact the 12% rule proper would have on Puerto Ricans even if impartially applied. See 345 F. Supp. at 73–74. Even more clearly the request for an injunction on the ground that New York was acting in violation of Title VI of the Civil Rights Act of 1964 did not require determination by a court of three judges. Swift & Co. v. Wickham, 382 U.S. 111, 86 S.Ct. 258, 15 L.Ed.2d 194 (1965). Again acting wisely, however, the three judges decided to continue to sit together rather than incur the risk that a possibly erroneous dissolution of the three-judge court or separation of the remaining issue for determination by a single judge might invalidate the decision. See Swift & Co. v. Wickham, 230 F.Supp. 398, 410 (S.D. N.Y.1964), appeal dismissed for want of appellate jurisdiction, *supra*, 382 U.S. 111, 86 S.Ct. 258, 15 L.Ed.2d 194, aff'd, 364 F.2d 241 (2 Cir. 1966), cert. denied, 385 U.S. 1036 (1967); Law Students Civil Rights Research Council, Inc. v. Wadmond, *supra*, 299 F.Supp. at 129.

Reaching the merits, the court found that the 12% rule had been applied in an invidious manner. With respect to the 400-odd out-of-state areas of persistent unemployment outside of Puerto Rico and outside the "150 Major Labor Areas" for which *Area Trends, supra,* provides monthly unemployment rates, the Commissioner's agents had made no effort to check the unemployment rates "notwithstanding that figures readily available to them have indicated a possibility that the twelve percent rule should be applied to some . . ." 345 F. Supp. at 72. With respect to these areas, the Out-of-State Resident Office had accepted a determination by local examiners that the applicant had a reasonable opportunity for employment. "In contrast, unemployment rates for every hamlet in Puerto Rico [were] checked—whether or not those communities are listed in *Area Trends*"; and if the 12% figure was exceeded, an affirmative response by Puerto Rican examiners on the "reasonable opportunity for work" standard was not accepted. *Id.* The court concluded that the 12% rule *as applied* violated Title VI of the Civil Rights Act of 1964 and the Fourteenth Amendment, although a nondiscriminatory application of it would not. The parties were directed to settle an order and judgment. *Id.* at 74.

At this late stage, plaintiffs renewed their motion "for an order determining that this action is properly a class action under Rule 23(a) and (b)(2) on behalf of all persons of Puerto Rican origin from whom, upon moving from New York to Puerto Rico, New York unemployment insurance benefits have been or may be withheld by defendant on the basis of defendant's application of his policy regarding movement to the so-called areas of 'high persistent unemployment'." They also submitted a proposed judgment which included a mandatory injunction directing the Commissioner to restore to the class the benefits they would have received but for defendant's application of his policy. The State submitted an affidavit representing that, after the court's decision, it had abandoned the 12% rule, effective July 5, 1972, and had no intention of reinstating it; that the case of any claimant held ineligible because of the rule after July 5, 1972 had been reopened for determination on the basis of

---

2. See Burger, Report on the Federal Judicial Branch—1973, 59 A.B.A.J. 1125, 1126 (1973); . and S. 271, 93d Cong., 1st Sess. (1973), already passed by the Senate.

other factors; and that four other categories of claims listed in the margin[3] had also been reexamined, with results favorable to the claimants "in the overwhelming majority of instances." Another affidavit showed that enlarging the reopenings to include all cases from January 1968 to July 1972 where denials had become final would require examination of 25,599 claims, with a potential liability of $31,874,628. The parties submitted extensive briefs with respect to the propriety of the monetary relief sought by the plaintiffs and the power of the court to afford it under the Eleventh Amendment.[4]

On November 21, 1972, the court entered its judgment and order. This began with a denial of plaintiffs' renewed motion for designation as a class action. It proceeded to declare that the defendant's withholding of unemployment insurance benefits from Puerto Rican Americans traveling to Puerto Rico on the basis of his application of his policy regarding areas of "high persistent unemployment" had violated rights secured to plaintiffs by the equal protection

clause of the Fourteenth Amendment and Title VI of the Civil Rights Act of 1964. It enjoined him from using such a criterion or policy unless this was applied in identical fashion to all claimants wherever they might move. No provision was made concerning monetary relief.

Plaintiffs' appeal, as stated at the outset, is from the denial of their motion for designation as a class action.

## II.

This court has had frequent occasion to consider the appealability of orders denying designation as a class action. It has created the principle that such an order is appealable as a final decision under Cohen v. Beneficial Indus. Loan Corp., 337 U.S. 541, 546, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949), if, but only if, denial of class action designation would ring a "death knell" on the prosecution of the action, see Eisen v. Carlisle & Jacquelin, 370 F.2d 119 (2 Cir. 1966), cert. denied, 386 U.S. 1035, 87 S.Ct. 1487, 18 L.Ed.2d 598 (1967).[5] Clearly there

---

3. These categories were:
   1. The claimant's right to request a hearing on the initial determination pursuant to Section 620, subd. 1 of the Unemployment Insurance Law had not expired as of July 5, 1972.
   2. The claimant had requested a hearing and the case had not been decided by the Referee prior to July 5, 1972.
   3. The Referee had decided the case prior to July 5, 1972 but the claimant had appealed and the appeal was pending as of July 5, 1972, or prior to July 5, 1972 the claimant's time to appeal to the Appeal Board had not expired.
   4. The Appeal Board had decided the case prior to July 5, 1972 and the claimant had a pending appeal in the Appellate Division of the New York State Supreme Court or in the New York State Court of Appeals, or prior to July 5, 1972 his time to appeal further had not expired.
   The claims of the named plaintiffs are within this class and they have been paid. Defendant's argument that this development moots the issue before this court, is, however, devoid of merit. See, e. g., Mindo v. New Jersey Dep't of Labor & Indus., 443 F.2d 824 (3 Cir. 1971).

4. Defendant relied on the then recent decision written by Judge McGowan for this court in Rothstein v. Wyman, 467 F.2d 226, 236–242 (1972). Plaintiffs responded with the Supreme Court's later summary affirmance in Sterrett v. Mothers' and Children's Rights Organization, 409 U.S. 809, 93 S.Ct. 68, 34 L.Ed.2d 70 (1972). After the district court entered its judgment, the Court denied certiorari in Rothstein, 411 U.S. 921, 93 S. Ct. 1552, 36 L.Ed.2d 315 (1973). The important issues raised by these cases now seem likely to be decided, after full argument, on the review of Jordan v. Weaver, 472 F.2d 985, 989–995 (7 Cir.), cert. granted, 412 U.S. 937, 93 S.Ct. 2776, 37 L.Ed.2d 398 (1973). Plaintiffs contend that even if the Eleventh Amendment holding in Rothstein was correct, which they deny, it is inapplicable because unemployment benefits are paid out of funds contributed by employers, with all administrative expenses paid by the United States.

5. The Third Circuit has held such an order unappealable even in such a case. Hackett v. General Host Corp., 455 F.2d 618, cert. denied, 407 U.S. 925, 92 S.Ct. 2460, 32 L. Ed.2d 812 (1972). The issue seems likely to

has been no "death knell" here; rather the action has proceeded to a paean of victory, although not so great a one as plaintiffs wish. But the issue in *Eisen* and other cases like it was the appealability of an order denying class action designation when the order was interlocutory save, arguably, in the artificial *Cohen* sense. Here the denial was a part of the "final decision" of the district court, 28 U.S.C. § 1291; indeed, as will later appear, while in form plaintiffs are complaining of the denial of their class action motion, in substance their complaint is that the judgment did not include a provision directing monetary relief to all members of the class.

The State says a conclusion that plaintiffs' real complaint relates to the terms of the injunction leads them from the frying pan into the fire so far as review by this court is concerned. For 28 U.S. C. § 1253 permits any party to appeal to the Supreme Court from "an order granting or denying, after notice and hearing, an interlocutory or permanent injunction in any civil action, suit or proceeding required by any Act of Congress to be heard and determined by a district court of three judges," and 28 U.S.C. § 1291 withholds from the courts of appeals jurisdiction to review final decisions of district courts "where a direct review may be had in the Supreme Court." We have already indicated the answer to this. Although the decision was made by a court of three judges, the issue of the discriminatory application of the 12% rule was not "required" to be so heard;[6] in such a case appeal lies to the court of appeals. Swift & Co. v. Wickham, *supra*, 382 U.S. at 129, 86 S. Ct. 258.

### III.

▪ While we would have welcomed an explanation by the district court of its reasons for denying the class action

motion, we think the case for doing this was clearly sufficient.

When plaintiffs' motion, after having made reference to the minimum requirements of Rule 23(a), Prerequisites to a Class Action, came to the additional requirements of Rule 23(b), Class Actions Maintainable, it singled out subdivision (b)(2). This authorizes maintenance of a class action when "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole." But insofar as the relief sought is prohibitory, an action seeking declaratory or injunctive relief against state officials on the ground of unconstitutionality of a statute or administrative practice is the archetype of one where class action designation is largely a formality, at least for the plaintiffs. As we have recently noted in Vulcan Society v. Civil Service Comm'n, 490 F.2d 387, 399 (1973), what is important in such a case for the plaintiffs or, more accurately, for their counsel, is that the *judgment* run to the benefit not only of the named plaintiffs but of all others similarly situated, see Bailey v. Patterson, 323 F.2d 201, 206–207 (5 Cir. 1963), cert. denied, 376 U.S. 910, 84 S.Ct. 666, 11 L.Ed.2d 609 (1964); cf. United States v. Hall, 472 F.2d 261, 266 (5 Cir. 1972), as the judgment did here. The State has made clear that it understands the judgment to bind it with respect to all claimants; indeed even before entry of the judgment, it withdrew the challenged policy even more fully than the court ultimately directed and stated it did not intend to reinstate the policy.

The practical significance of the denial of class action designation was thus limited to the claim for a mandatory injunction ordering monetary restitution. Even apart from the question of the

---

be resolved on the review of our third opinion in Eisen v. Carlisle & Jacquelin, 479 F. 2d 1005, cert. granted, 414 U.S. 908, 94 S. Ct. 235, 38 L.Ed.2d 146 (1973).

6. The situation would be different if plaintiffs were seeking to appeal the portions of the court's initial decision which dismissed their broader claims.

court's power to grant relief,[7] see note 4, *supra*, the State's policy arguments against this were impressive. Unemployment benefits are payable for a limited period, generally 104 days over a 52-week span under New York law, New York Labor Law §§ 590, subd. 4, 521; cf. *id.* § 601, to enable the worker to maintain himself and his family during the period shortly following his loss of employment; payment in 1973 of compensation that should have been paid four or five years earlier would scarcely serve that purpose. Compare Rothstein v. Wyman, *supra*, 467 F.2d at 234–235.

Beyond this, the practical difficulties of affording monetary restitution to persons outside the four categories recognized by the State, see note 3, *supra*, were formidable. The class whom plaintiffs sought to represent would not be automatically entitled to all the compensation payments that had been withheld; they would be entitled only to the amount by which withholdings under the 12% rule exceeded those that would have been made anyway under the more general policies the court found proper. Determination of this, only for those members of the class who had filed claims, let alone those who had not, would have required investigation of over 25,000 claimants, for more than 500,000 weeks, with average benefit

checks ranging from $40.10 in 1968 to $56.17 in 1972.[8] The court could well have concluded under such circumstances that equity did not demand, or even justify, reopenings beyond those to which the State had agreed. Since monetary relief thus was properly declined and class action designation was unnecessary for anything else, refusal of this was permissible.

Affirmed.

---

7. Plaintiffs suggest that, if the court thought itself precluded from issuing a mandatory injunction, it could have granted declaratory relief, which might stimulate the State into consenting to be sued or lead the Legislature to act affirmatively on behalf of the injured class. It is hard to see what added moral force a declaration in a class action would have as against that already made. Plaintiffs also claim that denial of class action status foreclosed the possibility of an intermediate form of injunctive relief which would overcome the bar created by lapse of time since a worker was last employed by creating a fiction that such a person had worked in covered employment in New York up to approximately the date of the decree. Apart from other considerations, it would have required great prescience on the part of the district court to anticipate the first appearance of this argument in plaintiff's reply brief here.

8. In an effort to minimize the enormity of the administrative problem, plaintiffs emphasized certain statements in the deposition of Edward J. Bruso, Employment Security Manager of the Out-of-State Resident Office, to the effect that even when a claimant was turned away on the basis of the 12% rule, a complete file was assembled on the subject of his eligibility apart from the rule. It is not clear that Mr. Bruso's statements would bear the weight plaintiffs now assign to them. Apart from this, plaintiffs conceded at argument that many claimants surely gave up on filing repeatedly after they were turned down on the basis of the 12% policy in their first few weeks of unemployment; on the later unemployment of such claimants, not to speak of eligibles who were discouraged by the 12% rule from filing at all, there are no records revealing availability for work on a case by case basis.