**64**

JANE B., by her next friend Vendetta MARTIN and Maria A., by her next friend Carol Braund, individually and on behalf of all others similarly situated, Plaintiffs,

v.

The NEW YORK CITY DEPARTMENT OF SOCIAL SERVICES; William Grinker, individually and as Administrator of the New York City Human Resources Administration and as Commissioner of the New York City Department of Social Services; Brooke Trent, individually and as Deputy Administrator of Social Services for Children; Leroy Colter, individually and as the Director of the Hegeman Diagnostic Reception Center; Richard Farrell, individually and as the Director of the Ashford Diagnostic Reception Center, Defendants.

No. 87 CIV. 2470 (PKL).

United States District Court,
S.D. New York.

Oct. 2, 1987.

The Legal Aid Soc., Juvenile Rights Div., New York City (Lenore Gittis, Henry S. Weintraub, Kay G. McNally, of counsel), for plaintiffs.

Peter L. Zimroth, Corp. Counsel of the City of New York, New York City (Antonia Levine, Bruce Turkle, of counsel), for defendants.

## OPINION & ORDER

LEISURE, District Judge:

This is a civil rights action brought by two juveniles, on behalf of themselves and others similarly situated, challenging the conditions at the Ashford Diagnostic Reception Center ("Ashford") and the Hegeman Diagnostic Reception Center ("Hegeman") as unconstitutionally substandard. Plaintiffs have moved for certification of their action as a class action with the class consisting of all current and future residents of Hegeman and Ashford. The Court hereby grants their motion for the reasons set forth below.

## FACTUAL BACKGROUND

Plaintiffs are adolescent girls who have been placed in the custody of the New York City Commissioner of Social Services and placed at the Ashford and Hegeman Diagnostic Centers. They seek certification of a class consisting of all current and future residents of Hegeman and Ashford. They also seek declaratory and injunctive

relief on behalf of the proposed class as well as compensatory damages for themselves.

The Hegeman and Ashford Diagnostic Centers are for adolescent girls who have serious behavioral and emotional problems that other facilities within the child care system have been unable to address adequately. The centers are designed to provide short-term residential care and diagnostic evaluations leading to placement in an appropriate long-term setting.

Plaintiffs allege that Hegeman and Ashford are characterized by inadequate supervision, overcrowding, a high incidence of physical violence and verbal abuse among staff and residents, frequent abuse of drugs and alcohol, and a dangerously unsanitary living environment. Additionally, they assert that they are being deprived of adequate and appropriate medical services, education, diagnostic and mental health services, recreation and exercise. As a result, plaintiffs claim that they have been subjected to an unreasonable danger of physical and emotional harm, and an exacerbation of the problems which caused them to be placed in public custody in the first place.

The licensed capacity of Ashford is 16 residents, and that of Hegeman is 24. (Affidavit of Henry J. Weintraub in Support of Plaintiff's Motion for Class Certification ¶ 7) (hereinafter "Weintraub Affidavit"). Plaintiffs contend that the average daily census at Ashford ranges from 21 to 25 girls, while the population at Hegeman has sometimes exceeded 35 girls. (*Id.* at ¶ 8). The defendants maintain that the average daily census since January 1, 1987, has been 23 girls at Ashford and 25 at Hegeman. (Affidavit of Angela Beni in Opposition to Plaintiffs' Motion for Class Certification ¶ 4). Approximately 18–20% of the girls included in the daily census are not residents of the facilities, but have been placed there for only a few days. Such placements have become necessary due to the population explosion in the New York City foster care system. *Id.*

Plaintiff Jane B. is a 16–year old girl who was originally placed in the custody of the New York City Commissioner of Social Services because she had been ejected from her home. Her placement at Hegeman grew out of allegations that she had committed an assault while residing at a group home run by a private voluntary agency. She was arrested and later returned to Hegeman for diagnostic evaluation and appropriate long-term placement.

Plaintiff Maria A. is a 13–year old girl who was adjudicated a Person in Need of Supervision (PINS) by the Family Court of Richmond County on August 5, 1986. After a series of placements in facilities operated by voluntary agencies, Maria was picked up on a warrant on December 22, 1986, and subsequently placed at Ashford in order to receive a diagnostic evaluation prior to long-term placement.

On April 29, 1987, Maria A. was arrested as a result of her alleged theft of two rings from the handbag of an Ashford staff member. The rings were valued by their owner at approximately $2,000. After the theft, Maria A. allegedly brought the jewelry to a neighborhood crack den where she used the rings to purchase $15.00 worth of crack. The police were called and she was removed from Ashford to the Spofford Juvenile Detention Center. Ashford personnel have since been advised that Maria A. has been placed in a residential facility, and it is therefore unlikely that she will return to Ashford.

## DISCUSSION

Plaintiffs seek certification as a class pursuant to Rule 23(a) and (b)(2) of the Federal Rules of Civil Procedure. They request that there be one class, consisting of all current and future residents of the Hegeman and Ashford Diagnostic Centers.

### I

Before addressing the specific requirements of Rule 23, the Court must first consider whether this class action is now moot. One of the named representatives, Maria A., no longer resides at Ashford, and the question thus arises whether the action is moot as to the claim regarding Ashford. The parties agree that, because of her re-

moval from Ashford, her individual claim for injunctive and declaratory relief has been rendered moot. (Defendants' Memorandum of Law in Opposition to Plaintiffs' Motion for Class Certification at 7) (hereinafter "Defendants' Memo"); (Plaintiffs' Reply Memorandum of Law in Support of Plaintiffs' Motion for Class Certification at 7) (hereinafter "Plaintiffs' Reply Memo"). The general rule, encompassed by Article III, "require[s] that the plaintiff's personal stake in the litigation continue throughout the entirety of the litigation." *Sosna v. Iowa,* 419 U.S. 393 at 402, 95 S.Ct. 553 at 558–59, 42 L.Ed.2d 532 (1975). However, the mootness of a named plaintiff's individual claim does not necessarily render a certified class action moot. *Sosna,* 419 U.S. at 397–403, 95 S.Ct. at 556–59; *Santiago v. City of Philadelphia,* 72 F.R.D. 619, 623 (E.D.Pa.1976).

In *Sosna,* plaintiff contested the constitutionality of Iowa's durational residency requirement. The Supreme Court explained that an exception to the mootness doctrine exists by virtue of certification of a class action:

> If appellant had sued only on her own behalf, both the fact that she now satisfies the one-year residency requirement and the fact that she has obtained a divorce elsewhere would make this case moot and require dismissal. But appellant brought this suit as a class action and sought to litigate the constitutionality of the durational residency requirement in a representative capacity. When the District Court certified the propriety of the class action, the class of unnamed persons described in the certification acquired a legal status separate from the interest asserted by appellant.

*Sosna,* 419 U.S. at 399, 95 S.Ct. at 557 (footnote and citations omitted). Therefore, the Court determined that "a case such as this, in which ... the issue sought to be litigated escapes full appellate review at the behest of any single challenger, does not inexorably become moot by the intervening resolution of the controversy as to the named plaintiffs." *Sosna,* 419 U.S. at 401, 95 S.Ct. at 558.

*Sosna* only addressed the issue of whether a class action must be dismissed because of mootness when the claim of the named plaintiff becomes moot after the class had been certified. In the instant case, however, a class was not certified before Maria A.'s claim became moot. A footnote in *Sosna* addressed this specific issue, even though it was not before the Court:

> There may be cases in which the controversy involving the named plaintiffs is such that it becomes moot as to them before the district court can reasonably be expected to rule on a certification motion. In such instances, whether the certification can be said to "relate back" to the filing of the complaint may depend upon the circumstances of the particular case and especially the reality of the claim that it would otherwise evade review.

*Sosna,* 419 U.S. at 402 n. 11, 95 S.Ct. at 559 n. 11.

■ Defendants correctly claim and plaintiffs graciously concede that this case does not comfortably fall into the "capable of repetition, yet evading review" exception, for it is not anticipated that Maria A. will return to Ashford. But the Supreme Court has found that even when

> there is no chance that the named plaintiff's expired claim will reoccur, mootness still can be avoided through certification of a class prior to expiration of the named plaintiff's personal claim. Some claims are so inherently transitory that the trial court will not have even enough time to rule on a motion for class certification before the proposed representative's individual interest expires. The Court considered this possibility in *Gerstein v. Pugh,* 420 U.S., at 110, n. 11 [95 S.Ct. at 861 n. 11]. *Gerstein* was an action challenging pretrial detention conditions. The Court assumed that the named plaintiffs were no longer in custody awaiting trial at the time the trial court certified a class of pretrial detainees. There was no indication that the particular named plaintiffs might again be subject to pretrial detention. Nevertheless, the case was held not to be moot because: "The length of pretrial custody

cannot be ascertained at the outset, and it may be ended at anytime by release on recognizance, dismissal of the charges, or a guilty plea, as well as by acquittal or conviction after trial. It is by no means certain that any given individual, named as plaintiff, would be in pretrial custody long enough for a district judge to certify the class. Moreover, in this case the constant existence of a class of persons suffering the deprivation is certain. The attorney representing the named respondents is a public defender, and we can safely assume that he has other clients with a continuing live interest in the case." *Ibid.* See also *Sosna v. Iowa,* 419 U.S., at 402 n. 11 [95 S.Ct. at 559 n. 11].

*United States Parole Commission v. Geraghty,* 445 U.S. 388, 398–99, 100 S.Ct. 1202, 1210, 63 L.Ed.2d 479 (1980). The facts stressed by the Court in the *Gerstein* case [1] cited in *Geraghty* are present in this case as well. The length of stay for any Hegeman or Ashford placement is inherently transitory and cannot be determined from the outset. Moreover, as in *Gerstein,* the continued existence of a class of persons suffering the alleged deprivation is virtually certain, for the centers currently available cannot accommodate all people in need of placement.

■ Decisions in this Circuit also support plaintiffs' contentions. In *White v. Mathews,* 559 F.2d 852 (2d Cir.1977), *cert. denied sub nom. Califano v. White,* 435 U.S. 908, 98 S.Ct. 1458, 55 L.Ed.2d 500 (1978), the Second Circuit considered whether a class action was rendered moot when the named plaintiff received the relief he was seeking before the District Court could rule on his motion for certification. The Second Circuit found that there was

no question that White had alleged a substantial controversy when he filed suit in January 1975, and nothing had

changed his position when he moved for class certification in March of that year. The existence of a controversy at that point was sufficient, on the facts of this case, to enable this suit to proceed as a class action.

*Id.* at 857. The Court stressed that the controversy must remain alive for members of the class in order for the class certification to relate back to the filing of the original complaint. That requirement is met here, for the current and future residents of Ashford still have a live controversy.

■ In *Ellis v. Blum,* 643 F.2d 68 (2d Cir.1981), the Second Circuit again considered whether a class action can continue when the claim of the named plaintiff is moot.[2] In that case, Judge Friendly relied on a different rationale to support continuation of the class action. A major purpose of the requirement that the plaintiff present a live controversy is to assure that the claim will be pursued with ardor. The Supreme Court has noted, however, that "vigorous advocacy can be assured through means other than the traditional requirement of a 'personal stake in the outcome.'" *Geraghty, supra,* 445 U.S. at 404, 100 S.Ct. at 1212. In *Ellis,* the named plaintiff also sought compensatory damages. The Court found sufficient guarantees that the claims for declaratory and injunctive relief would be pursued with ardor because plaintiff continued to press her claim for damages. *Ellis v. Blum,* 643 F.2d at 85. The Court reasoned that because it was likely that "a favorable decision on Ellis' damages claim would also determine the right of other disability recipients to declaratory or injunctive relief, ... it would be a waste of judicial resources" for courts to consider the same claim in an identical suit by another member of the same class. *Id.* at 84–85. Similarly, in the instant case Maria A. still has a claim for compensatory dam-

---

1. *Gerstein v. Pugh,* 420 U.S. 103, 95 S.Ct. at 854, 43 L.Ed.2d 54 (1975).

2. The District Court did not reach the issue of class certification because it concluded that it lacked jurisdiction over the action. The Second Circuit found that the District Court had juris-

diction and added that "if the district court ... should see fit to grant class certification, we foresee no mootness barrier to adjudication of the class claims for prospective relief." *Ellis v. Blum,* 643 F.2d at 85.

ages, and the existence of that claim indicates that the action will be pursued with vigor even though Maria A. no longer has a personal stake in the claim for declaratory and injunctive relief.

 ▮ Defendants, however, maintain that this action falls under the general rule for mootness which requires dismissal. They cite *Holt v. Moore,* 541 F.2d 460 (4th Cir. 1976) to support this proposition. *Holt* is inapposite, however, in that the named plaintiff did not even move for class certification until months after his individual claim had been rendered moot. Plaintiffs here filed for certification at a time when both individual plaintiffs presented live cases and controversies.[3] The *Sosna* exception, as developed in *Gerstein* and *Geraghty,* extends to cases in which the motion for class certification was filed before the action became moot as to the named plaintiff. *Sosna, supra,* 419 U.S. at 402, n. 11, 95 S.Ct. at 559 n. 11; *Gerstein,* 420 U.S. at 110–11, n. 11, 95 S.Ct. at 861 n. 11; *Geraghty,* 445 U.S. 398–99, 100 S.Ct. at 1210. The *Holt* court thus correctly found that case not covered by the relation back doctrine, for precisely the reason that this case is covered: the motion for certification must be made before the named plaintiff's case is moot.

Defendants also maintain that the exception is inapplicable because Maria A. independently concluded her stay at Ashford and by her own actions extinguished her individual claim. Defendants claim that because Maria A.'s termination at Ashford "was not the inevitable result of placement at a short-term diagnostic facility," (De-

fendants' Memo at 9) the *Sosna* exception is inapplicable. Defendants nonetheless concede that "were Maria to have left Ashford because an appropriate long-term placement had been found, the exception would likely have saved the claim from mootness." (Defendants' Memo at 8–9).

The Court does not find merit in defendants' claim. First, the Court does not accept defendants' contention that Maria A. "remove[d] herself from [Ashford], a position in which she claimed she needed relief from the Court." (Defendants' Memo at 9). It is true that Maria A.'s acts led to her removal. But "it was the city defendants ... [who] took affirmative steps to remove her.... (Plaintiffs' Reply Memo at 9). Any attempt on defendants' part to imply that Maria A. deliberately chose to extinguish her interest in the present action is not necessarily true. Even if true, however, it is far from apparent that a deliberate act by plaintiff is legally significant.[4]

This Court therefore finds that the claims of the proposed class are not rendered moot by reason of Maria A's departure from Ashford and the mootness of her individual claim for injunctive and declaratory relief.

## II

The Court next turns to the specific requirements of Rule 23. Rule 23(a) states the four prerequisites to maintenance of a class action.[5] Each of the requirements will be considered in turn.

 ▮ *Numerosity and Impracticability of Joinder.* Rule 23(a)(1) requires that

---

**3.** The motion for certification was filed on April 29, 1987. On the same day Maria A. was arrested and later removed from Ashford to the Spofford Juvenile Detention Center. There is no indication in the record, however, of precisely when she was removed from Ashford, and defendants do not contend that this point is dispositive of the mootness question.

**4.** In *Gerstien,* the Supreme Court noted that the pretrial detention there challenged could be terminated by, among other things, a guilty plea. 420 U.S. at 110–11, n. 11, 95 S.Ct. at 559 n. 11. Certainly that is a voluntary act, but the Court held the *Sosna* exception applicable. What is legally relevant is that the status of the plaintiff

would likely end before the issues were resolved.

**5. Rule 23. Class Actions**

 (a) **Prerequisites to a Class Action.** One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class. Fed.R.Civ.P. 23(a).

"the class is so numerous that joinder of all members is impracticable" for a class action to proceed. The parties disagree as to the precise number of girls who usually reside at Hegeman and Ashford, but there is no serious dispute among the parties that the first requirement of Rule 23(a) is satisfied. Defendants assert that the average daily census has been 25 girls at Hegeman and 23 at Ashford. (Defendants' Memo at 4). Plaintiffs contend that the daily census at Hegeman has at times exceeded 35 while the population at Ashford has ranged from 21 to 25 residents. (Weintraub Affidavit ¶ 8). The class that plaintiffs seek to have certified also includes an undetermined number of girls who will reside at Hegeman or Ashford in the future. The fact that the size of the proposed class has not been precisely determined "is not a fatal defect in the motion; a class action may proceed upon estimates as to the size of the proposed class." *In re Alcoholic Beverages Litigation*, 95 F.R.D. 321, 324 (E.D.N.Y.1982). Nor is a specific number required as a prerequisite to maintenance of a class action. *United States ex rel. Walker v. Mancusi*, 338 F.Supp. 311, 315–16 (W.D.N.Y.1971), *aff'd*, 467 F.2d 51 (2d Cir.1972) (class of 38 prisoners deemed sufficiently numerous). In view of the fluid composition of the populations at Hegeman and Ashford, joinder of all the residents is impracticable, and the first requirement of Rule 23(a) is therefore satisfied.

■ *Commonality.* Rule 23(a)(2) requires the existence of "questions of law or fact common to the class." In this case, there are common questions of fact as to whether defendants have failed to provide plaintiffs with adequate medical, psychological, counseling and educational services, safe and sanitary conditions, and adequate supervision. A common question of law exists as to whether the alleged deficiencies are violative of the Due Process Clause of the Fourteenth Amendment or the laws of New York State. Although there may be factual differences among members of the class in that the educational, medical and other needs of the individuals vary, this does not preclude certification. Rather, as long as there is a common question, individual differences do not bar class treatment. *Kamean v. Local 363, International Brotherhood of Teamsters*, 109 F.R.D. 391, 394 (S.D.N.Y.1986).

■ *Typicality.* Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." In this case, the claims of Maria A. and Jane B. are typical of others in the class;[6] the conditions they challenge affect all members of the class and relief for all class members is predicated on the same legal theory. "There has been general agreement that the existence of varying fact patterns to support the claims of individual class members does not mandate a finding of lack of typicality, as long as the claims arise out of the same legal or remedial theory." *Alcoholic Beverages Litigation, supra*, 95 F.R.D. at 324.

*Fairness and Adequacy of Representation.* Rule 23(a)(4) requires that "the representative parties ... fairly and adequately protect the interests of the class." Defendants claim that Jane B. and Maria A. lack the necessary personal qualities required of class representatives by Rule 23(a)(4). They therefore request that class certification be denied.

This requirement of Rule 23(a)(4) has been interpreted to "embrace both the competence of the legal counsel and the stature and interest of the named representative parties themselves." *Alcoholic Beverages Litigation*, 95 F.R.D. at 325. There is no dispute in this case as to the competence of counsel to prosecute this litigation vigorously. (Defendants' Memo at 16). As to the personal qualities of the named representatives, defendants rely on language in several cases and a noted commentary:

In order to assess the adequacy of the named representatives, courts have looked to factors such as their honesty,

---

**6.** Many cases and commentators have observed that the typicality requirement of Rule 23(a)(3) substantially overlaps the common question requirement of Rule 23(a)(2) and the adequacy of representation requirement of Rule 23(a)(4). *See, e.g.,* 7A C. Wright, A. Miller & M. Kane, *Federal Practice and Procedure* § 1764 at 232–35 (2d ed. 1986).

conscientiousness, and other affirmative personal qualities. If the representative displays a lack of credibility regarding the allegations made or a lack of knowledge or understanding concerning what the suit is about, then the court may conclude that Rule 23(a)(4) is not satisfied.

7A C. Wright, A. Miller & M. Kane, *Federal Practice and Procedure* § 1766 at 308–10 (2d ed. 1986) (citations omitted).

■ The inquiry, then, into the representatives' personal qualities is not an examination into their moral righteousness, but rather an inquiry directed at improper or questionable conduct arising out of or touching upon the very prosecution of the lawsuit. *See, e.g., Darms v. McCulloch Oil Corp.*, 720 F.2d 490 (8th Cir.1983); *Green v. Carlson*, 653 F.2d 1022 (5th Cir.), *cert. denied*, 454 U.S. 944, 102 S.Ct. 484, 70 L.Ed.2d 254, *reh'g denied*, 454 U.S. 1093, 102 S.Ct. 661, 70 L.Ed.2d 633 (1981); *Weisman v. Darneille*, 78 F.R.D. 669 (E.D.N.Y. 1978); *Panzirer v. Wolf*, 663 F.2d 365 (2d Cir.1981), *cert. denied*, 458 U.S. 1107, 102 S.Ct. 3486, 73 L.Ed.2d 1368 (1982). In *Panzirer*, the Second Circuit ruled that plaintiff's lack of credibility rendered her an inadequate class representative. The Court reached this conclusion because plaintiff gave four different versions of a conversation with her broker on which the action was based. *Id.* at 368. As *Panzirer* indicates, the courts look to personal characteristics only insofar as they touch upon the lawsuit. If the courts prevent persons with questionable moral characters from acting as class representatives, prisoners, mental patients, juvenile offenders or others capable of socially deviant behavior could never have an adequate representative and thus could never be certified. This is an unacceptable result. The fact that the named plaintiffs may be juvenile delinquents does not prevent this Court from certifying the class. This Court therefore finds no reason to withhold certification; both plaintiffs' counsel and plaintiffs themselves are able to fairly and adequately protect the interests of the class.

The two cases relied on by defendants do not support a contrary outcome. In *Schatzman v. Talley*, 91 F.R.D. 270 (N.D. Ga.1981), the court did not even address the issue presented in this case. There the court denied certification because the named plaintiff had interests antagonistic to the class as a whole. Nor does *Alcoholic Beverages Litigation, supra*, 95 F.R.D. 321, support defendants' contentions. When discussing the adequacy of representation requirement in *Alcoholic Beverages Litigation*, the court noted that the "[p]laintiffs [had] not displayed any personal qualities that would suggest that they [were] unfit to represent the class." *Id.* at 326. The court found no evidence of a failure to adhere to standards of honesty, integrity and candor and accordingly certified the class. Thus, neither of these cases supports defendants' position that certification of the class should be denied because the named plaintiffs do not adequately represent the class.

Plaintiffs have therefore satisfied the four requirements set out in Rule 23(a). Rule 23(b) goes on to provide that

> [a]n action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:
>
>   *    *    *    *    *    *
>
> (2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole.

Defendants have refused to act on grounds that affect the class, and declaratory and injunctive relief is therefore appropriate. Defendants do not contend otherwise.

### III

Defendants maintain, however, that even if all the requirements set forth in Rule 23 are satisfied, this Court should exercise its discretion and refuse to certify the class because "declaratory and injunctive relief will adequately protect all persons subject to the challenged governmental practices or policies without class designation or certification." (Defendants' Memo at 19). In

support of this contention, defendants cite a line of cases beginning with *Galvan v. Levine*, 490 F.2d 1255 (2d Cir.1973), *cert. denied*, 417 U.S. 936, 94 S.Ct. 2652, 41 L.Ed.2d 240 (1974). The District Court in that case denied a motion for certification of a class of Puerto Rican plaintiffs who challenged New York State's eligibility requirements for unemployment insurance. In affirming the denial of the motion for class certification, Judge Friendly, writing for the Second Circuit, stated:

> insofar as the relief sought is prohibitory, an action seeking declaratory or injunctive relief against state officials on the ground of unconstitutionality of a statute or administrative practice is the archetype of one where class action designation is largely a formality, at least for the plaintiffs.

*Galvan*, 490 F.2d at 1261. While Judge Friendly's reasoning is entirely cogent, it is wholly inapplicable to this situation. Plaintiffs in this action do not seek merely prohibitory relief declaring a statute or administrative practice unconstitutional. Rather, they seek relief that would require defendants to take "affirmative steps to remedy existing unconstitutional conditions ... and to implement standards that comport with the mandates of federal and state laws and regulations." (Plaintiffs' Reply Memo at 19).

Judge Ward's opinion in the unreported case of *Milburn v. Coughlin*, No. 79 Civ. 5077 (S.D.N.Y. Nov. 26, 1980), granted certification to a class of prisoners over objections similar to those raised by the defendants here. Judge Ward noted that

> where ... the remedy sought is *mandatory*, requiring affirmative action on the part of the state to upgrade a constitutionally insufficient practice, the Court does not have the same confidence that class certification is an unnecessary "formality." Were *Galvan* taken to this extreme, certification pursuant to Rule 23(b)(2) would never be appropriate, because the very facts which would make certification possible would render it unnecessary. *see Mendoza v. Lavine*, 72 F.R.D. 520, 523 (S.D.N.Y.1976).

*Milburn v. Coughlin*, No. 79 Civ. 5077, slip op. at 3 (emphasis in original).

■ Because the relief sought here is not simply prohibitory, defendants' reliance on *Galvan* is misplaced. Certification of the class is necessary to guarantee that mandatory relief runs to the benefit of all members of the class. An additional reason for granting the motion for certification lies in avoiding problems of mootness. *See Mendoza v. Lavine*, 72 F.R.D. 520, 523 (S.D.N.Y. 1976).

## IV

The only remaining question relates to the composition of the class so certified. Plaintiffs contend that the appropriate class should include "every girl who is physically placed in Hegeman or Ashford, regardless of the length of time she actually remains." (Plaintiffs' Reply Memo at 16). Defendants, on the other hand, maintain that if a class is certified, it should be limited to "those girls who have been, or will be, placed in Hegeman or Ashford to receive a diagnostic evaluation and are awaiting appropriate long-term placements in the foster care system." (Defendants' Memo at 22). The parties thus dispute whether the 18–20% of the residents of Hegeman and Ashford who are placed in the centers for only a few days should be included in the class.

■ It is true that those girls temporarily placed at Hegeman and Ashford do not require diagnostic and educational services. But the suit does not merely concern inadequate educational, diagnostic and counseling services. The alleged unsanitary physical conditions, use of drugs and alcohol, and violence and abuse among staff and residents are also at the heart of this suit. Because all residents of Hegeman and Ashford, whether they are housed temporarily or for diagnostic and placement purposes, live in the allegedly substandard conditions, all residents should comprise the class. If it becomes apparent in the future that the interests of the two groups are inconsistent, the Court may con-

sider certifying appropriate subclasses under Rule 23(c)(4)(B).

SO ORDERED.