**Evelyn CUTLER and William Tenorio, Jr. by his next friend, Nilda Tenorio, individually and on behalf of all others similarly situated, Plaintiffs,**

v.

**Cesar PERALES, Commissioner of the New York State Department of Social Services and William Grinker, Administrator of the New York City Human Resources Administration, Defendants.**

No. 88 Civ. 8615 (PKL).

United States District Court,
S.D. New York.

Oct. 16, 1989.

Plaintiffs have moved for certification of a class action pursuant to Fed.R.Civ.P. 23. The putative class would consist of all New York City applicants for, or recipients of, Medicaid who receive DAFHs from the State DSS but do not obtain timely final administrative action as required by federal regulations.[1] Defendants oppose plaintiffs' motion for class certification. Defendants also argue that plaintiff Cutler be removed from the lawsuit for lack of standing, and that plaintiff Tenorio's complaint be dismissed as moot.

Cardozo Bet Tzedek Legal Services (Yisroel Schulman, Toby Golick, of counsel), New York City, Legal Services for the Elderly (Constance P. Carden, of counsel), New York City, Community Action for Legal Services, Brooklyn (Jessica Braginsky, of counsel), Brooklyn, N.Y., for plaintiffs.

Robert Abrams, Atty. Gen., State of N.Y. (Robert J. Schack, of counsel), New York City, Peter L. Zimroth, Corp. Counsel of City of New York (Naomi Sheiner, Bonnie Mussman, of counsel), New York City, for defendants.

## ORDER & OPINION

LEISURE, District Judge:

Plaintiffs Evelyn Cutler and William Tenorio, Jr., two recipients of Medicaid, claim that defendant agency officials did not comply in a timely fashion with decisions rendered after fair administrative hearings ("DAFHs"), which granted plaintiffs additional Medicaid benefits. Plaintiffs request declaratory and injunctive relief to compel state and local agencies administering Medicaid to take prompt action after DAFHs. Named as defendants are Commissioner Cesar Perales of the New York State Department of Social Services ("State DSS") and Administrator William Grinker of the New York City Human Resources Administration ("HRA").

## BACKGROUND

Medicaid is a joint federal and state program which provides financial and other support for the medical needs of eligible persons. Under federal law, the state agency charged with administering Medicaid must grant a fair hearing to any person whose claim for medical assistance is denied. 42 U.S.C. 1396a(a)(3). The state must hold the fair hearing, make a decision, and take action implementing the decision within 90 days from the date that the hearing was requested. 42 C.F.R. 431.244, 45 C.F.R. 205.10(a)(16). In New York State, the responsibilities of administering Medicaid is divided between state and local governments. While the state government holds the fair hearings and makes the decision, it is up to local governments to take action consistent with the DAFH. The New York City HRA is one such local agency vested with the duty of implementing DAFHs.

On July 8, 1988, plaintiff Evelyn Cutler requested additional Medicaid benefits from HRA. Cutler is a 77-year-old woman who needs almost constant medical assistance. When her son stopped residing at home, she was forced to ask HRA for increased benefits. This request was denied without explanation on September 16. On the same day, Cutler scheduled a hearing before the State DSS for October 18. At the hearing, Cutler put forward evi-

---

1. Under 42 C.F.R. 431.244 and 45 C.F.R. 205.10(a)(16), a state must issue a decision and take final administrative action within 90 days of a request for a hearing. Under 42 C.F.R. 431.246 and 45 C.F.R. 205.10(a)(18), a state must make corrective monetary payments promptly in response to a DAFH favorable to the recipient.

dence from several sources which indicated her need for increased benefits. On November 9, the State DSS issued an opinion reversing HRA's decision and ordering HRA to reassess Cutler's medical needs based on the evidence presented by Cutler at the hearing. The state's DAFH did not order HRA to take any steps at that time to increase Cutler's benefits.

On December 6, 1988, Cutler served defendants with the initial complaint in this litigation, demanding prompt attention to fulfilling her needs in accordance with the DAFH. Though the 90–day period for compliance with DAFHs would not elapse until December 15, Cutler did not believe that HRA had taken any action in response to the ruling of the State DSS. Soon after service of the complaint, HRA increased Cutler's benefits as she had initially requested. HRA did not undertake a complete reassessment of Cutler's needs as the State DSS has ordered; rather, HRA simply began increased home care.

On March 28, 1989, plaintiff William Tenorio, Jr. intervened in the lawsuit. Tenorio is a retarded eight-year-old child whose Medicaid benefits were terminated by HRA. Tenorio requested a hearing before the State DSS on October 17, 1988. The hearing was held on November 22, and the decision later rendered by the state ordered an immediate restoration of Tenorio's benefits. There was no compliance with the DAFH on the part of HRA. On February 15, 1989, Tenorio's counsel notified defendants of his intention to file suit compelling compliance with the DAFH. On February 16, a full month after the 90–day period had expired, defendant HRA agreed to restore Tenorio's benefits. Several weeks later, Tenorio officially intervened in Cutler's lawsuit with the consent of defendants.

This lawsuit was initiated by way of order to show cause for a preliminary injunction and class certification, which was converted into a motion by consent of the parties. Plaintiffs seek to certify as a class "all New York City applicants for or recipients of Medicaid who receive Decisions After Fair Hearings from the New York State Department of Social Services

but do not obtain final administrative action in a timely manner." Order to Show Cause at 2; plaintiffs' brief at 1. Plaintiff argues that the putative class fulfills all the requirements of Fed.R.Civ.P. 23(a) and 23(b)(2) and thus should be certified.

## DISCUSSION

The Court will first consider the threshold issues of standing and mootness before discussing class certification.

### A. Standing

Defendants claim that plaintiff Evelyn Cutler lacks standing to bring this lawsuit. District courts lack authority to hear claims that are not either a "case or controversy" under Article III of the U.S. Constitution. *Allen v. Wright,* 468 U.S. 737, 104 S.Ct. 3315, 82 L.Ed.2d 556 (1984). Plaintiff must satisfy a three-pronged inquiry to be granted standing in federal courts—first, plaintiff must show a concrete and particularized injury in fact; second, the injury must be traceable to defendant's conduct; and third, the injury must be redressable by removal of defendant's conduct. *In re U.S. Catholic Conference and National Conference of Catholic Bishops v. Abortion Rights Mobilization Inc.,* 885 F.2d 1020, 1023–24 (2d Cir.1989).

This lawsuit concerns timely compliance with DAFHs reached by the State DSS. The decision entered in favor of plaintiff Cutler by the State DSS order HRA to "conduct a proper evaluation of [Cutler's] medical need for Personal Care Services ..., including obtaining a current physician's order and a social assessment and a nursing assessment," to investigate and rectify any differences in the reports, and, if the patient might need 24–hour medical care, to undertake another independent medical review. State Department of Social Services, Decision After Fair Hearing, *In the Matter of the Appeal of Evelyn Cutler,* November 9, 1988, at 3–4 (Defendants' Exhibit A). Defendants do not claim that any of these steps have been taken. Instead, three days before the 90–day period expired, HRA "concluded that there was no necessity for it to obtain current reassessments of Mrs.

Cutler's medical condition...." Affidavit of Kenneth Klug, Director of Field Operations for Home Care Services, HRA, April 28, 1989.

HRA then simply increased Cutler's health care to the level that she had requested initially, before her fair hearing. Cutler therefore lacks any of the reports that HRA was supposed to prepare, and thus she does not have the benefit of the increased knowledge of her condition that these reports would provide. In addition, it is possible that the result of these reports would be to further increase Cutler's health care, or to give her support for future requests for more care. Plaintiff Cutler has indeed suffered injury in fact, the cause of which and the power of redress lie with defendants. Thus plaintiff Cutler has standing to continue this lawsuit.

### B. Mootness

■ Defendant Grinker argues that the claims of plaintiff Tenorio are moot, because HRA reinstated his benefits as per order of the State DSS before he filed a complaint or a motion for class certification.[2] Several Supreme Court and Second Circuit opinions have held that named plaintiffs will not be eliminated on mootness grounds if their claims became moot after filing for class certification, even if the district court has yet to certify the class. *United States Parole Commission v. Geraghty*, 445 U.S. 388, 100 S.Ct. 1202, 63 L.Ed.2d 479 (1980); *Gerstein v. Pugh*, 420 U.S. 103, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975); *Sosna v. Iowa*, 419 U.S. 393, 95 S.Ct. 553, 42 L.Ed.2d 532 (1975); *Ellis v. Blum*, 643 F.2d 68 (2d Cir.1981); *White v. Mathews*, 559 F.2d 852 (2nd Cir.1977), *cert. denied sub nom. Califano v. White*, 435 U.S. 908, 98 S.Ct. 1458, 55 L.Ed.2d 500 (1978); *Jane B. v. New York Department of Social Services*, 117 F.R.D. 64, 67–69 (S.D.N.Y.1987). These rulings often use the term "relate-back doctrine" in allowing district courts to determine the mootness of a named plaintiff's claim at the time that the complaint was originally filed. *Sosna, supra*, at 402 n. 11, 95 S.Ct. at 559 n. 11; *White v. Mathews, supra*, at 857; *Jane B., supra*, at 69.

No court has yet held that a plaintiff whose claim is moot before filing either a complaint or a motion for class certification may remain in the lawsuit. One authority has written that "[t]he representative party must have a live claim at the time the action is filed, however, in order to avoid dismissal." Wright, Miller & Kane, Federal Practice and Procedure: Civil 2d § 1785.1 at 164. Several courts have dismissed named plaintiffs in such situations. *Tucker v. Phyfer*, 819 F.2d 1030, 1033 (11th Cir.1987); *Brady v. Thurston Motor Lines*, 726 F.2d 136, 146 (4th Cir.1984), *cert. denied*, 469 U.S. 827, 105 S.Ct. 110, 83 L.Ed.2d 53 (1984); *Walker v. Haynes*, 659 F.2d 46, 47–48 (5th Cir.1981); *See also Jane B., supra*, at 69.[3]

In the case at bar, plaintiff Tenorio's claim was moot before he filed a complaint or a motion for class certification. The order entered by the State DSS required that HRA withdraw its discontinuance of Tenorio's benefits and to restore them. State Department of Social Services, Decision After Fair Hearing, *In the Matter of the Appeal of William Tenorio, Jr.*, December 16, 1988, at 2 (Defendants' Exhibit B). HRA did wait more than 90 days after Tenorio's request for a fair hearing before reinstating Tenorio's benefits, but it did so before Tenorio commenced any legal action. The case at bar does not fit into any exception to the mootness rule yet developed by the Supreme Court. Thus this

---

**2.** Plaintiffs claim that defendants' counsel said at a pretrial conference before this Court that defendants would not raise any issues of justiciability in order to avoid repeated interventions by new plaintiffs. However, defendant Grinker does raise the issues of plaintiff Cutler's standing and plaintiff Tenorio's mootness, and thus this Court will address these questions.

**3.** This Court previously wrote: "The *Holt* court thus correctly found that case not covered by the relation back doctrine, for precisely the reason that this case is covered: the motion for certification must be made before the named plaintiff's case is moot." *Jane B., supra*, at 69, *citing Holt v. Moore*, 541 F.2d 460 (4th Cir.1976).

Court must eliminate plaintiff Tenorio from this litigation.[4]

### C. Class Certification

To prevail on this motion, plaintiff Cutler must satisfy the Court that the putative class would fulfill the requirements of numerosity, commonality, typicality, and adequacy of representation. Fed.R.Civ.P. 23(a). In addition, the Court must find that the putative class can be maintained under one of the subdivisions of Rule 23(b). In this case, plaintiff argues that because declaratory and injunctive relief is sought, the class should be certified under Rule 23(b)(2). Each of these issues will be discussed in turn.

### 1. Numerosity

■ Rule 23(a) states that a class should be certified only if "the class is so numerous that joinder of all members is impracticable." The rule does not require that a certain minimum number of class members be identified. *Jane B., supra,* at 70; *United States ex rel. Walker v. Mancusi,* 338 F.Supp. 311, 315–16 (W.D.N.Y.1971), *aff'd,* 467 F.2d 51 (2d Cir.1972) (class of 38 prisoners deemed sufficiently numerous). In fact, it is not necessary for plaintiff to state the exact number of putative class members to satisfy the Court. *Jane B., supra,* at 70; *In re Alcoholic Beverages Litigation,* 95 F.R.D. 321, 324 (E.D.N.Y. 1982). All that need be shown is that due to the number of potential class members, joinder is impracticable, and the administration of a class action is more feasible than repeated interventions by other plaintiffs.

In Fiscal Year 1987, approximately 1.3 million New York City residents were receiving some type of Medicaid. Plaintiffs' brief at 7. As plaintiff sensibly points out, it is probable that a large number of recipients who request increased Medicaid are not provided with final relief within 90 days of scheduling a fair hearing before the State DSS, as is required by federal regulations. In their complaint, plaintiff esti-

mates this number to be in the thousands. Amended Complaint at ¶ 12. Plaintiff has represented both in her brief and at a December 21, 1988 conference before this Court that she has been notified of numerous potential intervenors. Plaintiffs' brief at 8. To avoid a series of future interventions and the burden of administering a multi-plaintiff litigation, this Court finds that plaintiff has satisfied the numerosity requirement of Rule 23(a).

### 2. Commonality

■ Plaintiff must also demonstrate that "there are questions of law or fact common to the class." One Court in this District has found that commonality "does not mean that all issues must be identical as to each member, but it does require that plaintiffs identify some unifying thread among the members' claims that warrants class treatment." *Kamean v. Local 363, Int'l Brotherhood of Teamsters,* 109 F.R.D. 391, 394 (S.D.N.Y.1986). All the putative class members in this litigation are concerned with a similar question of law—whether defendants violated the 90–day rule of 42 C.F.R. 431.244 and perhaps the due process clause of the U.S. Constitution. Plaintiffs' brief at 9. Also, the putative class members will be attempting to show a common fact situation where they are denied timely relief after a favorable DAFH due to defendants' conduct. Thus this Court finds that plaintiff has satisfied the requirement of commonality.

### 3. Typicality

■ Rule 23(a) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." As with commonality, typicality does not mean that the named plaintiff and the putative class members must have identical claims. Rather, the certifying court must find that the claims of the representative and the class are based on the "same legal or remedial theory," *Alcoholic Beverages, supra,* at 324, and that the interests

---

**4.** For the remainder of this opinion, "plaintiff" will refer to plaintiff Cutler alone. "Plaintiffs' brief" will be cited in the plural as it was filed by both Cutler and Tenorio, and was so referred to by the parties therein.

of the representative are in no way antagonistic to those of the class. *Alcoholic Beverages, supra,* at 324; *Women's Committee for Equal Employment Opportunity v. National Broadcasting, Inc.,* 71 F.R.D. 666, 670 (S.D.N.Y.1976). Or, viewed in the most practical way, typicality is present when all members of the putative class would benefit by the success of the named plaintiff. *See Eisen v. Carlisle & Jacquelin,* 391 F.2d 555, 562 (2d Cir.1968).

The claims of the named plaintiff are typical of the putative class in that all have allegedly suffered from the practices of defendants. Similarly, all would rely on the same legal theories and would request the same relief—namely, the establishment of a system whereby Medicaid recipients would receive prompt relief after favorable DAFHs. The named plaintiff and the putative class have no interests antagonistic to each other, and the class would certainly benefit by the success of the plaintiff. Thus the typicality requirement is fulfilled.

### 4. Adequacy of Representation

■ Finally, Rule 23(a) requires that "the representative parties will fairly and adequately protect the interests of the class." This Court must find that the named plaintiff and her attorneys will vigorously protect the interests of the class throughout the litigation. *Jane B., supra,* at 70; *Alcoholic Beverages, supra,* at 325. In judging the adequacy of the named plaintiff, the Court will look more for disqualifying negative characteristics rather than evaluate plaintiff's moral posture. *See Jane B., supra,* at 71; *Panzirer v. Wolf,* 663 F.2d 365 (2d Cir.1981), *cert. denied,* 458 U.S. 1107, 102 S.Ct. 3486, 73 L.Ed.2d 1368 (1982) (Second Circuit ruled that plaintiff's lack of credibility disqualified her as class representative).

Both the named plaintiff and plaintiff's counsel will adequately forward the interests of the putative class in this litigation. Though Medicaid recipients are often by their nature infirm; nothing suggests that the named representative now before the

Court will not do her utmost to protect the rights of the class. Even if the named plaintiff has been granted increased services by HRA after her favorable DAFH, she still maintains a continuing interest in the subject of this litigation. It is quite probable that the named plaintiff might find herself in similar situations with HRA and the State DSS in the future. And Cutler still lacks the medical reports that HRA was supposed to prepare in accordance with her DAFH. Counsel in this case are "non-profit legal services' offices which serve a clientele with a continuing interest in the issues of this litigation." Plaintiffs' brief at 11. They claim to have substantial resources and experience, and have demonstrated full competence in their written submissions and appearances before this Court.

### 5. Rule 23(b)(2)

■ In addition to the four prerequisites of Rule 23(a), plaintiff must also fit her proposed class action into one of the categories enumerated in Rule 23(b). Plaintiff argues that her action fits in under Rule 23(b)(2) which describes cases where "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief to the class as a whole." Most civil rights and other anti-government actions are brought under this provision. In general, plaintiff must be seeking affirmative changes in government practices through injunctive or declaratory relief.

Defendants argue that the relief sought by plaintiff in this case is prohibitory—it merely requires that defendants discontinue their practice of not taking final administrative action within 90 days of a Medicaid recipient's request for a fair hearing. Under a line of cases beginning with *Galvan v. Levine,* 490 F.2d 1255 (2d Cir.1973), *cert. denied,* 417 U.S. 936, 94 S.Ct. 2652, 41 L.Ed.2d 240 (1974),[5] the Second Circuit has held that when merely prohibitory relief is sought and no affirmative action is asked of the govern-

---

5. Subsequent progeny of *Galvan* are *Berger v. Heckler,* 771 F.2d 1556 (2d Cir.1985); *Forts v.* *Ward,* 621 F.2d 1210 (2d Cir.1980); *Davis v. Smith,* 607 F.2d 535 (2d Cir.1978).

ment-defendant, the district court should deny class certification. Because the benefits of the judgment would run to all putative class members via *stare decisis,* class certification is "largely a formality." *Galvan, supra,* at 1261. To avoid adminstrative burden, district courts should not allow plaintiffs to maintain class actions in such situations under Rule 23(b)(2).

Plaintiff points out several District Court cases which narrow the *Galvan* rule to cases where purely prohibitory relief is sought. *Jane B., supra; Ashe v. Board of Elections,* 124 F.R.D. 45 (E.D.N.Y.1989); *Milburn v. Coughlin,* No. 79 Civ. 5077 (S.D.N.Y. Nov. 26, 1980).[6] In *Jane B.,* this Court found the *Galvan* rule inapplicable where plaintiffs "seek relief that would require defendants to take affirmative steps to remedy existing unconstitutional conditions ... and to implement standards that comport with the mandates of federal and state laws and regulations." *Jane B., supra,* at 72.

In paragraph 105 of her amended complaint, plaintiff asks this Court to declare the present practices of HRA and the State DSS to be unlawful, and to enjoin both defendants to establish internal policies and practices which will conform to the standards of federal law and ensure the prompt enforcement of DAFHs. It is true, as defendants contend, that plaintiff "do[es] not specify any new practices or procedures [she] wish[es] to see established ... and do[es] not request the Court to supervise an ongoing process of compliance with any new procedures." Defendant Grinker's brief at 7. Also, it is true that the affirmative relief asked for by plaintiff is phrased as the obverse of her prohibitory relief. *Id.* But this Court declines to create a threshold of specificity of affirmative relief that plaintiff must cross to qualify for class certification. Plaintiff's lawsuit is clearly aimed at affirmatively changing government practices and not merely condemning certain government conduct. At this point in the discovery process, it is unrealistic to expect that plaintiff will be able to come forward with detailed proposals and requests for mandatory relief.

■ A more important question, and one frequently dwelled upon by Courts in this Circuit, is whether defendants would conform their conduct in response to a single, non-class action judgment against them, or whether other similarly situated plaintiffs would have to bring independent actions to enforce their rights based on *stare decisis.* If the latter scenario is more probable, then this Court should certify a plaintiff class to guarantee easy enforcement of the judgment for all Medicaid recipients requesting timely action after a favorable DAFH.

Courts are split on the effectiveness of single judgments to bring relief to all similarly situated persons. In *Vulcan Society of New York City Fire Dept., Inc. v. Civil Service Commission,* 490 F.2d 387 (2d Cir. 1973), the Second Circuit considered the constitutionality of the Fire Department entrance exam for black and hispanic applicants. The Court affirmed the District Court's refusal to certify a plaintiff class, because, if plaintiffs did eventually prevail, "it would be unthinkable that the municipal defendants would insist on other actions being brought." *Vulcan Society, supra,* at 399. Another Court in this District, in following the *Vulcan* approach, has written:

The defendants are public officials charged with compliance with and enforcement of federal as well as state laws. The Court assumes these public officials, mindful of their responsibilities, will apply the determination here made equally to all persons similarly situated.

*Feld v. Berger,* 424 F.Supp. 1356, 1363 (S.D.N.Y.1976), *quoted in Ruiz v. Blum,* 549 F.Supp. 871, 878 (S.D.N.Y.1982); *see also Jane Doe, supra,* at 3.

---

6. In *Jane Doe v. The New York City Board of Education,* No. 81 Civ. 0197 (E.D.N.Y. May 19, 1981), a District Court held *Galvan* applicable and denied class certification where a plaintiff had asked for significant affirmative relief. The Court in *Jane Doe,* however, based its holding on the likelihood that defendants would apply a holding favorable to the plaintiff to all persons similarly situated. The quality of relief was not the determinative factor.

Many District Courts in this Circuit, on the other hand, have certified plaintiff classes when defendants did not express a commitment to apply the judgment of the court in the single action to all similarly situated persons. *Follette v. Vitanza,* 658 F.Supp. 492, 507 (N.D.N.Y.1987); *Koster v. Perales,* 108 F.R.D. 46, 54 (E.D.N.Y.1985); *Wilder v. Bernstein,* 499 F.Supp. 980, 994 (S.D.N.Y.1980); *Laurido v. Simon,* 489 F.Supp. 1169, 1173 (S.D.N.Y.1980); *Montes v. Brezenoff,* 85 F.R.D. 130, 131–32 (S.D.N.Y.1980). In *Galvan,* the defendant had withdrawn the challenged policy prior to class certification and had declared its intention to abide by the ruling of the single action. *Galvan, supra,* at 1261.

In the case at bar, defendants have made no representation of willingness to change internal procedures to ensure compliance with a ruling for plaintiff. Because this litigation challenges a wide range of practices divided between two government agencies, enforcement might be difficult. *See Ashe, supra; Handschu v. Special Services Division,* No. 71 Civ. 2203 (S.D.N.Y.1979). In addition, most putative class members are either old or infirm and could not as effectively bring separate enforcement actions. Therefore, a class action is preferable as a means to guarantee to all Medicaid recipients easy enforcement of a favorable judgment and prompt relief after a DAFH.

### CONCLUSION

A plaintiff class consisting of all New York City applicants for or recipients of Medicaid who receive Decisions After Fair Hearings from the New York State Department of Social Services, but do not obtain final administrative action within a timely period, is hereby certified under Fed.R. Civ.P. 23. The claim brought by plaintiff William Tenorio, Jr. is dismissed as moot.

The Clerk of this Court is hereby directed to enter an order to this effect.