Elsa GULINO; Mayling Ralph; Peter Wilds; and Nia Greene, on behalf of themselves and all others similarly situated, Plaintiffs,

v.

The BOARD OF EDUCATION OF The CITY SCHOOL DISTRICT OF The CITY OF NEW YORK; and the New York State Education Department, Defendants.

No. 96CIV.8414(CBM).

United States District Court, S.D. New York.

July 13, 2001.

Joshua Samuel Sohn, Piper Marbury Rudnick & Wolfe, Barbara J. Olshansky, New York City, for Elsa Gulino, Mayling Ralph, Peter Wilds, Nia Greene.

Bryan D. Glass, Jeffrey D. Friedlander, New York City, for Board of Education of the New York City School District of the City of New York.

Frederic L. Lieberman, Eliot Spitzer, Attorney General of State of New York, New York City, for New York Education Department.

### *OPINION*

MOTLEY, District Judge.

Plaintiffs, Elsa Gulino, Mayling Ralph, and Peter Wilds,[1] on behalf of themselves and all other persons similarly situated, filed this racial employment discrimination action against the New York State Education Department ("SED") and the Board of Education of the City School District of the City of New York ("BOE") pursuant to Title VII, the New York State Human Rights Law ("NYSHRL") and the New York City Human Rights Law ("NYCHRL") on November 8, 1996. Plaintiffs allege that the two tests used by the BOE and SED to determine qualification for teacher licenses have a disparate impact on African–American and Latino teachers in the New York City public schools.

Plaintiffs filed a motion for class certification on February 26, 2001. On May 10, 2001, after hearing the parties' oral arguments, this court granted plaintiffs' motion for the reasons discussed below.

### I. FACTUAL ALLEGATIONS OF UNDERLYING SUIT

Plaintiffs are teachers in the New York City public school system who have either lost their teaching licenses or have been prevented from obtaining a teaching license because of the requirement that they achieve a satisfactory score on one of the two challenged tests: the National Teacher Core Battery ("NTE") or the Liberal Arts and Sciences Test of the New York State Teacher Certification Examination ("LAST"), the successor to the NTE.[2] Plaintiffs allege that the use of the tests as a requirement for obtaining permanent teaching certificates has an impermissible disparate impact on African–American and Latino teachers in New York City public schools.

From 1986 through 1991, the named plaintiffs and class members were awarded New York City teaching licenses in their individual fields after they completed all of the requirements established by the New York City Board of Examiners ("Board of Examiners" or "BOE"), the division of the BOE that oversaw professional licensing. The Board of Examiners requirements in part included:

1) passing initial written, oral, and performance tests administered by the Board of Examiners to those applying for first-time teaching positions;

2) fulfilling field work requirements (full-time teaching experience in the classroom for at least two years);

3) passing a Board of Examiners' test in the applicant's area of teaching specialty;

4) completing a Masters degree in education;

5) completing additional course work in human relations, child abuse, and other required subjects; and

6) successfully completing a three-year probationary period in an appointed position during which the applicant was observed and evaluated.

In 1991, by virtue of state legislation, the Board of Examiners was abolished and all persons seeking to obtain a City license and a permanent full-time teaching appointment were required to pass the NTE given by defendant SED. The NTE was a test given mainly to college students planning to enter the teaching profession and it essentially measured the test-taker's knowledge of

---

**1.** Named plaintiff Nia Greene is no longer employed in the New York City public school system and no longer wishes to serve as a named plaintiff.

**2.** Defendants officially discontinued the use of the NTE in September 1996.

American college liberal arts courses, such as English, American history, math, science, art, and music.

In 1993, SED began phasing out its use of the NTE and replaced it with another similar test, the LAST. Defendants stopped using the NTE in September 1996. Neither the NTE or LAST was designed to measure teaching proficiency, test pedagogical theory, or assess a teacher's knowledge of specific subject areas. They were intended to be used to assess young teaching program applicants for whom no other indicia of means of assessment were available.

Plaintiffs allege that the NTE and LAST have had a severe and disparate impact on minorities. The most successful test-takers are young persons currently in college; persons with masters and Ph.D. degrees fail the NTE and LAST at substantially higher rates than those with less education, regardless of race. This is because these tests measure only what is learned in general college courses. Plaintiffs maintain that Educational Testing Service ("ETS"), the company that developed the NTE, only validated the test to measure preparation of applicants for initial teaching positions or licenses, not for decisions regarding retention or termination. Plaintiffs intend to prove that use of the NTE and LAST to make retention and termination decisions violates relevant professional standards and Title VII decisional authority.

Plaintiffs allege that white test-takers passed the NTE at an average rate of 83.7% while African American and Latino test-takers passed at rates of 40.3–43.9%. Plaintiffs also allege that white test-takers passed the LAST at an average rate of 93% while African American and Latino test-takers passed at rates of 50–56.4%. As for New York City public school teachers, 78% of white teachers who took the NTE passed compared to 42% of African–Americans and 34.9% of Latinos. With respect to the LAST, 79.1% of white teachers who took the exam passed compared to 37.5% of African–Americans and 28.3% of Latinos.

When defendants began enforcing the SED test requirement in late 1994, thousands of experienced teachers credentialed by the City in the 1980s and early 1990s failed the test. However, rather than terminating these teachers, the BOE, with the knowledge and approval or the SED, allowed those who failed to attain qualifying scores on the NTE or the LAST to continue to teach in the City public school system. Most of those in the plaintiff class were retained in the same teaching positions with the same course loads. However, defendants revoked plaintiffs' and class members' City licenses, demoted them to substitute status, reduced their salaries by as much as 30–40%, froze their pensions, and revoked their seniority and retention rights. Even when these teachers subsequently passed one of the two tests, defendants refused to place them in the position they had acquired prior to 1995, instead of treating them as newly licensed teachers. Those who have passed the tests have not had their pre–1995 salaries or their pension or seniority credits restored.

## A. Individual Named Plaintiffs

### 1. Elsa Gulino

Ms. Gulino is a Latina woman who was employed in the New York City public school system from 1983 through 2000. She served as a regular full-time substitute teacher from 1983 until her permanent appointment as a licensed teacher of Bilingual Special Education in 1988. Ms. Gulino has a Master of Science degree in education.

Ms. Gulino was appointed as a bilingual special education teacher at Public School 159 in the Bronx in October 1988. On October 25, 1991, she was notified by the BOE that she had completed her three-year probationary period.

In late December 1994, BOE notified Ms. Gulino that she was required to pass either the NTE or LAST by June 30, 1995 to maintain her license. Ms. Gulino failed both the NTE and the LAST. Ms. Gulino's license was terminated and her pay was reduced to the salary level of a substitute teacher. Her salary was cut by more than 30%, her pension was frozen, and her seniority and retention rights were revoked.

By June 1993, Ms. Gulino completed all of the requirements for the position of Education Evaluator with BOE and was granted a position in this area. She continued in this position until her retirement in July 2000.

## 2. Mayling Ralph

Mayling Ralph is an African–American woman who was employed as an elementary middle school teacher in the New York City public school system from 1986 through 1998. She served as a regular full-time substitute teacher from 1986 until her permanent appointment as a teacher of common branches (elementary education) in 1989.

BOE issued Ms. Ralph a license on May 1, 1989 and she was appointed to C.S. 129 in the Bronx. Ms. Ralph earned her B.A. in 1986 and her M.S. in remedial education in 1992. On September 5, 1992, Ms. Ralph was notified by BOE that she had completed her three-year probationary period.

In December 1994, BOE notified Ms. Ralph that she had to pass either the NTE or LAST by June 30, 1995 to retain her license. Ms. Ralph failed to pass the NTE and in October 1995, her license was terminated. She was demoted to a per diem substitute teacher, her salary was cut, her pension was frozen, and her seniority and retention rights were revoked.

Ms. Ralph was retained to perform the same teaching duties until April 1998 when she left the New York City public school system to teach on Long Island.

Although Ms. Ralph passed the LAST in June 1996, she was never reinstated to the position that she had achieved prior to the loss of her license.

## 3. Peter Wilds

Mr. Wilds is an African–American man who has been employed in the New York City public school system since 1985. He first began teaching as a regular full-time teacher of emotionally handicapped children in 1985 and continued in this position through 1988. Mr. Wilds was issued a license to teach special education in the day schools on May 2, 1988. Mr. Wilds received a B.A. in 1974 and a M.A. degree in Guidance and Counseling from NYU in 1977. In 1988, Mr. Wilds completed a seconds M.A. in special education. On September 6, 1991, Mr. Wilds was notified by BOE that he had completed his probationary period.

In December 1994, Mr. Wilds was notified that he was required to pass the NTE or LAST by June 30, 1995 in order to retain his license. Mr. Wilds failed to obtain a passing score on the NTE or the LAST. In September 1995, BOE terminated his license, demoted him to the position of a per diem substitute, cut his salary, froze his pension, and revoked his seniority and retention rights.

Mr. Wilds was retained in his teaching position until January 1997, when he sought a position under his Guidance and Counseling license. At that time, Mr. Wilds began working as a guidance counselor and remains in that position today.

## II. MOTION FOR CLASS CERTIFICATION

Plaintiffs move for an order certifying this case as a class action pursuant to Rule 23(a) and 23(b)(2) of the Federal Rules of Civil Procedure. Plaintiffs and class members are African–American and Latino persons who were and are employed as teachers in the New York City Public School System and are subject to the licensure and certification requirements imposed by both SED and BOE. Plaintiffs seek certification of the following class [3]:

> All African–American and Latino individuals employed as New York City public school teachers by Defendants, on or after June 29, 1995 [4], who failed to achieve a qualifying score on either the NTE or the LAST, and as a result either lost or were denied a permanent teaching appointment.

---

[3]. This class definition is found in plaintiffs' reply brief and amends the class definition in the original brief. Plaintiffs amend the class definition in response to some of defendants' objections found in defendants' opposition briefs.

[4]. Plaintiffs have included the date June 29, 1995 because that date constitutes the commencement of the 300–day period prior to the filing of the EEOC charges in this case.

Defendants SED and BOE argue in opposition that the proposed class is ill-defined, overly broad, and unmanageable.

This court finds that the proposed class as amended is adequately defined.

## A. THE REQUIREMENTS OF RULE 23(a)

For this case to proceed as a class action, it must meet the four requirements of Rule 23(a) and those of at least one subsection of Rule 23(b). *See Marisol A. v. Giuliani,* 126 F.3d 372, 375–76 (2d Cir.1997). The required elements of Rule 23(a) are:

> (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims of or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

FED. R. CIV. P. 23(a).

### 1. NUMEROSITY

■ Plaintiffs argue that the proposed class, which consists of thousands of individuals, is so numerous that determining relief on an individual basis would be impracticable. The Second Circuit has stated that a class of only 40 members is presumptively sufficient to meet this prong of Rule 23(a). *See Consolidated Rail Corp. v. Town of Hyde Park,* 47 F.3d 473, 483 (2d Cir.1995). In making this determination, "[p]laintiffs need not establish the exact number of potential class members as the courts are empowered to 'make common sense assumptions' to support a finding of numerosity." *Marisol A. v. Giuliani,* 929 F.Supp. 662, 689 (S.D.N.Y.1996) (citations omitted), *aff'd,* 126 F.3d 372 (2d Cir.1997). Plaintiffs' estimation of a class numbering in the thousands is based on Tables 3 and 4 of Exhibit D. The Tables are based on computerized data provided by the defendants. Based upon the data provided so far, plaintiffs count 2,083 persons in the proposed class. *See* Seliger Dec. at ¶ 3. Plaintiffs may rely on "reasonable inferences drawn from available facts in order to estimate the size of the class." *In re Blech*

*Securities Litig.,* 187 F.R.D. 97, 103 (S.D.N.Y.1999). Plaintiffs assert that their estimation of numerosity includes only those who would have had a permanent appointment and license rights in New York City but for their failing these tests.

Plaintiffs also argue that joinder of all class members would be impracticable because (1) prosecution of the individual actions based on the same claims would be judicially inefficient; (2) not all class members live within the New York City area; (3) many of the teachers have limited financial resources; and (4) many of the teachers would be unable to pursue their claims effectively if at all. *See, e.g., Robidoux v. Celani,* 987 F.2d 931, 935–36 (2d Cir.1993) (discussing cases in which numerosity leads to impracticable joinder).

This court finds that plaintiffs have satisfied Rule 23(a)(1)'s numerosity requirement.

### 2. COMMONALITY

■ To satisfy the "commonality" requirement of Rule 23(a)(2), the named plaintiffs need show only a single question of fact or law common to the prospective class. *See In re "Agent Orange" Prod. Liab. Litig.,* 818 F.2d 145, 166–67 (2d Cir.1987). Plaintiffs argue that the questions at the heart of this suit—whether defendants' use of the NTE and LAST to demote and penalize public school teachers has a disparate impact on African–Americans and Latino teachers and is not justified by any legitimate business interest, and whether defendants' use of these tests violates Title VII of the Civil Rights Act of 1964, as amended—are common to all members of the class.

Class members need not allege that they all suffered the same injury to show commonality; "demonstrating that all class members are *subject* to the same harm will suffice." *Baby Neal for and by Kanter v. Casey ("Baby Neal"),* 43 F.3d 48, 56–57 (3d Cir.1994)(emphasis in original). As long as there are legal issues common to class members' claims—such as defendants' misuse of tests creating a disparate impact on teachers of color—certification is appropriate. *See*

*Cutler v. Perales,* 128 F.R.D. 39, 44 (S.D.N.Y. 1989).

This court finds that plaintiffs have satisfied Rule 23(a)(2)'s commonality requirement.

### 3. TYPICALITY

■ Rule 23(a)(3)'s "typicality" requirement is satisfied if the claims of the named plaintiffs arise from "the same event or practice or course of conduct that gives rise to the claims of the class members, and if [the claims are] based on the same legal theory." H. NEWBERG & A. CONTE, 1 NEWBERG ON CLASS ACTIONS § 3.15 at 3–78 (3d ed.1992); *see also Marisol A.,* 126 F.3d at 377. The named plaintiffs need not have "endured the same injuries that have been sustained by the class members." *Hassine v. Jeffes,* 846 F.2d 169, 177 (3d Cir.1988). As long as the class representatives have "incentive to prove all the elements of the cause of action which would be presented by the individual members of the class were they initiating individualized actions," the representatives satisfy Rule 23. *In re NASDAQ Market–Makers Antitrust Litig.,* 169 F.R.D. 493, 510 (S.D.N.Y.1996).

In this case, the claims alleged by the individual class representatives are typical of the other members of this class. Class representatives are African–American and Latino persons teaching in the City's public schools, who, by virtue of the disparate passing rates on the certification tests, have had their licenses terminated, been demoted to the position of *per diem* substitute teachers, had their salaries cut by more than 30%, had their pension credits frozen, and had their seniority and retention rights revoked, despite being retained in their original teaching positions with the same course loads.

Furthermore, named plaintiffs satisfy the typicality requirement when all members of the class would benefit from the named plaintiffs' action. *See Cutler,* 128 F.R.D. at 45. Here, plaintiffs seek to enjoin the precise policies that have been responsible for the alleged violations of class members' employment rights. Any success by the named plaintiffs on these issues will necessarily benefit the prospective class.

This court finds that plaintiffs have satisfied Rule 23(a)(3)'s typicality requirement.

### 4. ADEQUACY OF REPRESENTATION

■ Rule 23(a)(4) requires that the class representatives fairly and adequately protect the interests of the class. Rule 23(a)(4) requires a two-tiered inquiry: (1) whether class counsel is qualified, experienced, and generally able to conduct the litigation, and (2) whether class members and the named plaintiffs have interests that are not antagonistic to one another. *See In re Drexel Burnham Lambert Group, Inc.,* 960 F.2d 285, 291 (2d Cir.1992), *cert. dismissed,* 506 U.S. 1088, 113 S.Ct. 1070, 122 L.Ed.2d 497 (1993). Plaintiffs argue that the named plaintiffs are represented by able counsel who have broad experience in class actions and civil rights cases. Plaintiffs also assert that the named plaintiffs are fully capable of adequately protecting the interests of the class as all class representatives have been subjected to the same kind of abuses endured by the class as a whole.

Defendants do not contest plaintiffs' argument concerning the first prong of Rule 23(a)(4). However, with regard to the second prong, defendant SED argues that the interests of the various class members are not compatible because some class members are newly-hired and some are experienced, and these two groups tend to fare differently on the tests. Defendant relies on the case of *Adrian R. v. New York City Board of Education,* 2001 WL 77066, at *4 (S.D.N.Y. January 30, 2001), in which the court denied class certification where the divergence of interests among the named plaintiffs went to the heart of the litigation.

SED also argues that the named plaintiffs are not adequate representatives because (1) Ms. Ralph never failed the LAST and the NTE is no longer used by the state; (2) Ms. Ralph's dispute does not concern the validity of the tests but the fact that her passing score could not be used retroactively to reinstate her license; and (3) Ms. Gulino is retired and is more interested in increasing her

retirement benefits rather than attaining a license.

Defendant BOE argues that none of the named plaintiffs would benefit from injunctive relief because none is seeking employment as licensed teachers with the BOE.

BOE also argues that none of the named plaintiffs falls within the category of African–American or Latino teachers who met the minimum requirements for licensure but were never fully licensed as full-time teachers after 1991 for failure to pass the NTE or LAST, a category which plaintiffs seek to represent. BOE argues that class certification should be denied to this subgroup.

Although defendants point out dissimilarities among the claims of the named plaintiffs and those of certain members of the proposed class, this court notes that the class representatives' claims need not be identical to those of the class members. *See, e.g., Marisol A.*, 126 F.3d at 378 (finding that class members' claims were sufficiently identical for class certification purposes despite dissimilarities); *Trief v. Dun & Bradstreet Corp.*, 144 F.R.D. 193, 200 (S.D.N.Y.1992) ("mere existence of individualized factual questions with respect to the class representative's claim will not bar certification"); *In re NASDAQ Market–Makers Antitrust Litig.*, 169 F.R.D. at 514–15 ("potential conflicts between buyers and sellers do not provide a basis for denying class certification here. Rather, in order to warrant denial of class certification, it must be shown that any asserted "conflict" is so palpable as to outweigh the substantial interest of every class member in proceeding with the litigation."). This is true even when a class representative "may later be barred from recovery by a defense particular to him that would not impact other class members." *Trief*, 144 F.R.D. at 200.

Based on the above, this court finds that plaintiffs have adequately satisfied Rule 23(a)(4)'s requirements.

## B. RULE 23(b)(2)

■ Rule 23(b)(2) is satisfied if "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief with respect to the class as a whole." *See* FED. R. CIV. P. 26(b)(2).

Rule 23(b)(2) certification is appropriate where plaintiffs have been injured by conduct based on policies and practices of the defendants which are applicable to the entire class, and where defendants have engaged in a pattern of discriminatory conduct against the class. *See Marisol A.*, 126 F.3d at 378 (finding that certification of suit against child welfare system is proper under 23(b)(2) where the alleged deficiencies "stem from central and systemic failure"); *English v. Town of Huntington*, 448 F.2d 319, 322 (2d Cir.1971) ("the Advisory Committee had civil rights actions in mind when it wrote Fed. R.Civ.P. 23(b)(2)"). Cases which seek to enjoin discriminatory practices employed by a governmental defendant are presumptively appropriate for Rule 23(b)(2) certification. *See Comer v. Cisneros*, 37 F.3d 775, 796 (2d Cir.1994) ("[P]attern of racial discrimination cases for injunctions against state or local officials are the 'paradigm' of Fed.R.Civ.P. 23(b)(2) class action cases.").

Defendants SED and BOE argue in opposition to certification under Rule 23(b)(2) that because individual monetary issues predominate over the group-wide declaratory and injunctive claims, Rule 23(b)(2) certification is not appropriate. Where injunctive relief and damages are sought under Rule 23(b)(2), the injunctive relief must be the predominant issue. *See Eisen v. Carlisle & Jacquelin* ("*Eisen II*"), 391 F.2d 555, 564 (2d Cir.1968) (holding that subdivision (b)(2) applies "only to actions exclusively or predominantly for injunctive or declaratory relief"), *later proceeding, Eisen v. Carlisle & Jacquelin* ("*Eisen III*"), 479 F.2d 1005 (2d Cir.1973), *vacated on other grounds*, 417 U.S. 156, 164 n. 4, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974); *see also Allison v. Citgo Petroleum Corp.*, 151 F.3d 402, 415 (5th Cir.1998) ("[M]onetary relief predominates in (b)(2) class actions unless it is incidental to requested injunctive or declaratory relief" and claims for "back pay, front pay, compensatory damages, punitive damages, prejudgment interest, attorneys' fees, and retroactive benefits" were not "incidental.").

In the present case, plaintiffs have dropped their claims for compensatory and punitive damages. This being the case, this court finds that plaintiffs' remaining claims for monetary relief do not predominate over plaintiffs' claims for injunctive and declaratory relief. Therefore, plaintiffs are not barred from bringing this action under Rule 23(b)(2).

■ In further opposition to certification under Rule 23(b)(2), SED argues that class certification is not the superior method of litigation insofar as plaintiffs seek injunctive and declaratory relief against government officials. This court rejects this argument since Rule 23(b)(2) does not require that a class action be a superior method of adjudication. *See Parker v. Time Warner Entertainment Co.*, 198 F.R.D. 374, 377, 381 (E.D.N.Y. 2001) (stating the differing tests for certification under Rule 23(b)(2) and Rule 23(b)(3)); *Bishop v. New York City Dep't of Hous. Pres. & Dev.*, 141 F.R.D. 229, 238 (S.D.N.Y. 1992) ("Such predominance and superiority tests apply only to Rule 23(b)(3) class actions.").

■ SED and BOE also argue that if named plaintiffs won injunctive or declaratory relief individually, the benefit would inure to the benefit of the proposed class even without certification. Defendant BOE argues that the Government Operations Doctrine of the Second Circuit, which provides that class certification is superfluous and unnecessary in an action against a government agency where injunctive and declaratory relief is sought, should bar class certification here. *See Galvan v. Levine*, 490 F.2d 1255, 1261–62 (2d Cir.1973).

Defendants' reliance on the Government Operations Doctrine and the *Galvan* line of cases is misplaced because:

(1) the *Galvan* rule does not require a district court to deny class certification whenever plaintiffs seek injunctive relief from a government defendant. *See Stenson v. Blum*, 476 F.Supp. 1331, 1336 (S.D.N.Y. 1979) (" '(I)t seems advisable to cautiously safeguard the interests of the entire class by ensuring that any order runs to the class as a whole.... Were this unnecessary, class cer-

tification pursuant to Rule 23(b)(2) would, arguably, never be necessary.' " (*quoting Mendoza v. Lavine*, 72 F.R.D. 520, 523 (S.D.N.Y.1976) (citations omitted))), *aff'd*, 628 F.2d 1345 (2d Cir.1980).

(2) the *Galvan* rule is narrow and only applies to those specific cases in which plaintiffs suing a governmental agency seek *only* prospective injunctive relief. *See Cutler*, 128 F.R.D. at 45; *Bishop*, 141 F.R.D. at 240 (holding that "*Galvan* does not apply to situations" in which "[p]laintiffs seek not only injunctive and declaratory relief, but also affirmative relief and damages").

(3) the Second Circuit has modified *Galvan* and has directed district courts to focus on the more relevant criteria of the defendant's admission of the existence of a "policy," its accession to "the identity of issues as to all potential class litigants," and the declaration of its intention to abide by the ruling of a single action. *Hurley v. Ward*, 584 F.2d 609, 611–12 (2d Cir.1978). Defendants here have offered no assurances that they would grant individual relief based upon the ruling in a single action. To the contrary, defendants have argued that the class definition is amorphous and overbroad. Thus, defendants are not committed to according all members of the proposed class relief based upon a single action.

(4) unlike the circumstances in *Galvan*, the denial of class certification here will adversely affect plaintiffs' ability to litigate this case effectively from discovery through enforcement.

Based upon the foregoing discussion, this court finds that plaintiffs meet the requirements of Rule 23(b)(2).

### III. CONCLUSION

Because plaintiffs have satisfied the requirements of Rule 23(a) and Rule 23(b)(2), this court GRANTED plaintiff's motion for class certification on May 10, 2001.